[No. 46391.   En Banc.   December 18, 1980.]

JACK L. KELLOGG, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

852

*Francis, Lopez & LePley,* by *Jack J. Ackerman,* for appellant.

*Slade Gorton, Attorney General,* and *Mark S. Northcraft, Assistant,* for respondent State, et al.

*Burgeson, Grenier & Oliver,* by *Robert J. Grenier,* for respondent City of Everett, et al.

STAFFORD, J.—Appellant Kellogg sued the State, the Department of Social and Health Services (DSHS), his parole officer Terre Doty, the City of Everett and two of its police officers for false arrest and false imprisonment.[1]

---

[1]The complaint also alleged malicious prosecution and a 42 U.S.C. § 1983-type action; however, these were not argued and are therefore deemed abandoned. *See State v. Fortun,* 94 Wn.2d 754, 626 P.2d 504 (1980).

Summary judgment against the plaintiff was granted all defendants. Kellogg sought direct review in this court, and we affirm the trial court.

Most of the facts are not disputed. In the early morning hours of Sunday, February 1, 1976, Raymond McCauley was the victim of a shotgun blast. He informed defendant police officers that Jack Kellogg was the assailant. Kellogg was located with the assistance of his parole officer, arrested by the police officers, and detained in the Snohomish County jail. Parole officer Doty served Kellogg with an order of parole suspension, arrest, and detention early that same day.

That afternoon the parole officer was informed by Everett police that others had been arrested and admitted the shooting. The police and the parole officer were still not convinced that Kellogg was not involved, however.

The next day Kellogg was taken before the Everett District Court which ordered him released on February 4 unless a complaint was filed before that time. Thereafter, Kellogg telephoned his parole officer from the jail and told her McCauley had informed his friends that Kellogg had not shot him. The parole officer was still concerned, however, that McCauley might have been intimidated into changing his story, knowing that only a week prior to his arrest Kellogg had been arrested in Seattle for obstructing a police officer and resisting arrest.

On February 4, the parole officer was informed by police that this was clearly a case of mistaken identity and Kellogg was not involved in the shooting. She immediately telephoned the Board of Prison Terms and Paroles (Board) and requested reinstatement of parole, which was granted that day. Upon being notified of this the parole officer called the Snohomish County jail and asked for Kellogg's release. She was informed, however, that the jail would not accept either a telephone call from the parole officer or a teletype communication from the Board as authorization for release; instead, they demanded an actual order of reinstatement and certification.

The next day, Thursday, February 5, a certification of Board action was signed and both the order of reinstatement and certification were mailed to the parole officer, pursuant to regular Board procedures. Due to an intervening weekend, these arrived in the Everett parole office sometime after Monday, February 9. On Wednesday the order of reinstatement and certification were hand carried to the Snohomish County jail and Kellogg was released. This was 11 days after his arrest.

■ An arrest or imprisonment is false if it is unlawful. A police officer is privileged to arrest without a warrant for offenses committed outside his presence if he has reasonable grounds to believe (1) that the offense committed is a felony, and (2) that the person apprehended committed the felony. Want of reasonable grounds to believe either renders the arrest unlawful. *Kilcup v. McManus,* 64 Wn.2d 771, 777, 394 P.2d 375 (1964). The fact that a person is later acquitted does not necessarily make the previous arrest actionable, however. *Sennett v. Zimmerman,* 50 Wn.2d 649, 314 P.2d 414 (1957).

Here it is uncontested the police officers who arrested Kellogg knew the victim had been shot with a shotgun and that the victim had identified Kellogg as the assailant. The officers thus were privileged to arrest Kellogg.

■ A lawful imprisonment following proper arrest may, in some circumstances, become unlawful. Thus a lawful arrest does not foreclose consideration of facts surrounding the subsequent imprisonment. *Tufte v. Tacoma,* 71 Wn.2d 866, 870, 431 P.2d 183 (1967). "It is the general, if not the universal, rule that, when a person is arrested and placed in jail, and is detained there for more than a reasonable time, the detaining officer is liable in an action for damages." *Housman v. Byrne,* 9 Wn.2d 560, 561, 115 P.2d 673 (1941). In *Housman* plaintiff was held in jail for 11 days without being taken before a committing magistrate; this was held to be unreasonable and an action for false imprisonment would lie. Here, however, Kellogg was held for only 1 day before he was taken before the district court, which was not

"more than a reasonable time". He was thereafter held under the court order and the parole detainer. These independent acts cut off any liability of the City of Everett and its police officers for the subsequent imprisonment in the county jail.[2]

Kellogg having failed to raise a material issue of fact in opposition to the motion for summary judgment, as required by CR 56, the action against the City of Everett and its police officers was properly dismissed. *See Barrie v. Hosts of America, Inc.*, 94 Wn.2d 640, 618 P.2d 96 (1980).

Like police officers, parole officers are privileged to cause the arrest, detention, and revocation of parole if they have a "reason to believe" there was a breach of a condition of parole or a violation of a law. RCW 9.95.120; *see also* RCW 72.04A.090.[3] As with the Everett police officers, parole officer Doty had a "reason to believe" there had been a breach of parole conditions or a violation of law, thus her subsequent actions were privileged.

Once the parole officer served the parole detainer she was powerless to set it aside. Only the Board of Prison Terms and Paroles is empowered to release the parolee from

---

[2]Since Snohomish County was not made a party to this suit, we need not consider the possibility of any liability as to it.

[3]RCW 9.95.120 reads in pertinent part:

"Suspension, revision of parole—Powers and duties of probation officers—Hearing—Retaking of parole violator—Reinstatement. Whenever the board of prison terms and paroles or a *probation and parole officer* of this state *has reason to believe a convicted person has breached a condition of his parole or violated the law of any state* where he may then be or the rules and regulations of the board of prison terms and paroles, *any probation and parole officer of this state may arrest or cause the arrest and detention and suspension of parole of such convicted person pending a determination by the board whether the parole of such convicted person shall be revoked.*" (Italics ours.)

RCW 72.04A.090 reads in pertinent part:

"Violations of parole or probation—Revision of parole conditions—Detention. *Whenever a parolee breaches a condition or conditions under which he was granted parole, or violates any law of the state* or rules and regulations of the board of prison terms and paroles, *any probation and parole officer may arrest, or cause the arrest and suspension of parole of, such parolee without a warrant, pending a determination by the board.*" (Italics ours.)

detention and reinstate parole. RCW 9.95.120; RCW 72.04A.090. The only responsibility of the parole officer is to report "[a]ll facts and circumstances surrounding the violation by such convicted person . . . to the board of prison terms and paroles . . . with recommendations." RCW 9.95.120. It is uncontested that parole officer Doty amply complied with these reporting requirements in a timely manner.

Kellogg raised no material issue of fact by affidavit or otherwise as required by CR 56. Thus, the summary judgment dismissal of the action against Terre Doty was also correct.

There still remains the unlawful imprisonment claim against the State and DSHS based upon the delay in releasing Kellogg. On February 4, the Board determined that Kellogg's parole should be reinstated retroactive to February 1; however, he was not released from jail until February 11.

■ Unlawful imprisonment is the intentional confinement of another's person, unjustified under the circumstances. *Tufte v. Tacoma, supra* at 870. The first two elements are uncontested here; the only issue is whether the delay was, as a matter of law, justified under the circumstances of this case.

■ Although we recognize a parolee's liberty is valuable, *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), it is not the same as that of a free man.

> One on parole from a final judgment and sentence of imprisonment is not a free man; he has not, by his parole, satisfied the judgment and sentence; his release is conditional only, and whether he has fulfilled the conditions of his parole is a determination to be made by the Board of Prison Terms and Paroles and not by the courts. His status on parole has been aptly described as that of one who is simply serving his time outside the prison walls.

*January v. Porter,* 75 Wn.2d 768, 776, 453 P.2d 876 (1969).

Thus, a detention which might be unreasonable and unjustifiable in the case of a truly free man may in some cases be reasonable or justifiable insofar as a parolee is concerned.

We find the delay in this case was neither unreasonable nor unjustifiable. On the date Kellogg was to be released from jail under the district court order, *i.e.,* February 4, the Board actually approved the reinstatement of his parole. The next day it signed and mailed a certification of board action. The process of releasing the parolee was thus promptly set in motion. There is no showing of any negligent behavior or intentional delay in following the procedure set by the Board. Further, the procedure itself has not been shown to be unreasonable. Mailing the order and certification to the parole officer was reasonable given the volume of board actions, and hand carrying these documents to the jail was reasonable to prevent any misdirection by the detaining agency's personnel. The purpose of this procedure was to ensure release of the detainee as soon as possible in the greatest number of cases. The slowness of the United States mail caused partially by the intervening weekend as well as the refusal of the Snohomish County jail to release Kellogg upon anything other than the actual order added to the delay. These agencies are not before the court, however, and we cannot impute to these defendants any delay caused by Snohomish County or the United States Postal Service.

When a parole board decides that detention of a parolee is no longer justified, speedy restoration of liberty is obviously a matter of high priority. *Burgess v. Roth,* 387 F. Supp. 1155 (E.D. Pa. 1975). Here the delay was unfortunate but, given the circumstances of this case and the lack of any negligent behavior or intentional delay by the defendants, it did not amount to a false imprisonment. Summary judgment for the State and DSHS was therefore proper.[4]

---

[4]Given this disposition of the case we need not address the issue of the immunity of the government and its officials.

We affirm the trial court in all respects.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.