[No. 16811–8–I. Division One. June 15, 1987.]

CHARLES JOSEPH NOEL, ET AL, *Appellants,* v. KING COUNTY, *Respondent.*

*Philip Mahoney,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Charles Craig*

*Parker, Deputy; Philip A. Talmadge* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondent.

PEKELIS, J.—Charles Joseph Noel appeals from a judgment dismissing his suit against King county for false arrest, false imprisonment, and medical negligence. He contends that the trial court erred in granting the County's motion for partial summary judgment on the issue of medical negligence and in denying his own motions for summary judgment and a directed verdict on the issues of false arrest and false imprisonment. He also contends that the trial court erred in instructing the jury as to the law of false arrest. In its cross appeal, the County assigns error to the trial court's refusal to admit evidence of marijuana cultivation in Noel's home.

## FACTS

In the spring of 1981, the King County Police, along with the Seattle Police, the Redmond Police, and the FBI, were investigating a series of armed robberies. By late May, the investigation had focused on one Tommy Fox, who was believed to be the leader of the gang who had committed the robberies. Fox was known to be a prison escapee and was believed to be extremely dangerous. During one of the robberies he had shot two people for no apparent reason.

In the early morning hours of May 28, Fox arrived at the home of Charles and Katherine Noel along with Bill Denny, Colleen Quinn, and two children. Denny, an old friend of Mr. Noel, had called earlier and had been given permission by Mrs. Noel to spend the night. Fox, Denny, and Quinn brought with them several boxes and suitcases which they took into the Noel home.

Later the same day, Noel went with Fox to start the latter's van, which had stalled nearby. They then went to a storage area and rented a locker for the van. Noel signed

the rental agreement "Charles N. Petersen" and used a fictitious address. After unloading the van and placing it in storage, Noel and Fox went to Frank's Market, where Fox expected to be picked up by his brother–in–law.

However, Fox's brother–in–law, a Mr. Anguelo, was at that time in the custody of the King County Police. Anguelo told the police that Fox and another individual would be at Frank's Market, and that Fox was extremely "paranoid," associating only with people whom he trusted completely. Acting on this information, agents of the King County, Redmond, and Seattle Police, as well as the FBI proceeded to Frank's Market, where they apprehended Fox and Noel. Noel was ordered to lie face down on the ground and was frisked while a gun was pointed at his head. Then he was handcuffed and taken by FBI agents to the King County Police Station.

At the police station, Noel was questioned by Detective William J. DiMonda of the King County Police. Although Noel made several requests for an attorney, DiMonda continued the questioning. Noel told DiMonda that Fox had come to his home the night before, alone and without a car, and had left some boxes there. Noel signed a form giving the King County Police permission to conduct a complete search of his home.[1] The police also obtained a search warrant based on earlier statements made by Noel to the FBI. Noel was then told that he was not under arrest. Since his car had been impounded, he accepted a ride to his home with DiMonda.

DiMonda and Noel arrived at Noel's home to find Denny and Quinn being detained in the driveway by officers who had gone there to await the arrival of the search warrant. In the garage was Denny's car, which matched the description of the car used in one of the robberies. Noel's car was in the driveway with a canvas bank bag visible in the open trunk.

---

[1]Noel contended at trial that his statements and his consent to search were given under duress, although in an earlier deposition he stated that he cooperated voluntarily with DiMonda's investigation.

DiMonda told Noel that he had lied, and that he was placing him under arrest again. Subsequent searches of the home, the cars, and the storage locker revealed large quantities of stolen cash, jewelry, and other items.

Noel was charged with possession of stolen property in the first degree and was confined in the King County Jail from May 28 until July 2, when he was released on bail. On July 17, the charge against him was dismissed on the prosecutor's motion. In the action involving Denny and Quinn, counsel for the State stipulated that Noel's arrest at Frank's Market was made without probable cause and that the statement Noel gave to DiMonda during questioning was obtained in violation of his constitutional rights.

Noel brought suit against King County seeking damages for false arrest, false imprisonment, and medical negligence.[2] The trial court granted the County's motion for partial summary judgment, dismissing Noel's claim of medical negligence. Noel's motion for summary judgment, based on a collateral estoppel theory, was denied. After the court denied Noel's motion for a directed verdict, the jury returned a verdict for the County and the court entered judgment accordingly. Noel appeals from this judgment, while the County brings a cross appeal in which it assigns error to the trial court's refusal to admit evidence of marijuana cultivation in Noel's home.

## MEDICAL NEGLIGENCE

Noel alleged in his complaint that during his confinement in the King County Jail he was deprived of necessary medical treatment for a back condition, "causing much suffering and anguish." The County moved for a partial summary judgment on the strength of the affidavit of Dr. Michael G. Robinson, a physician employed by the Seattle King County Department of Public Health. Dr. Robinson stated

---

[2]Appellant's wife, Katherine Noel, was also a plaintiff in the suit. Her claims were dismissed on the County's motion for summary judgment. Although husband and wife have jointly filed a notice of appeal, the appeal raises no issues pertaining to Katherine Noel.

that his review of Noel's medical records indicated the County employees had complied with all applicable standards of care in the treatment of Noel's lower back pain. Noel responded with the affidavit of Dr. Jonathan Zend, who had treated him for low back pain prior to his arrest. Dr. Zend stated (1) that failure to promptly contact a patient's attending physician when requested to do so falls below the applicable standard of care, and (2) that treatment with aspirin alone is insufficient if the patient does not respond to the treatment. Noel stated in his own affidavit that he was treated only with aspirin, although he requested other pain medication.

After the trial court denied the County's motion, the County brought a second motion based on the deposition testimony of Dr. Zend. In his deposition, Dr. Zend stated (1) that he had not reviewed Noel's medical records and had no firsthand knowledge of the treatment Noel received in jail or of the symptoms he had displayed, and (2) that Noel's condition was not worsened by his incarceration. The trial court granted the second motion, finding that the County's alleged negligence was not the proximate cause of any injury to Noel.

On an appeal from an order of summary judgment, the reviewing court engages in the same inquiry as the trial court. *See Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). Where a properly supported motion for summary judgment is made, the party opposing the motion must set forth specific facts showing that there is a genuine issue for trial. CR 56(e). In the case of a claim for medical negligence, such facts must be shown by expert medical testimony. *Swanson v. Brigham,* 18 Wn. App. 647, 651–52, 571 P.2d 217 (1977); *Shoberg v. Kelly,* 1 Wn. App. 673, 677, 463 P.2d 280 (1969),

*review denied,* 78 Wn.2d 992 (1970); *Riedisser v. Nelson,* 111 Ariz. 542, 534 P.2d 1052, 1054 (1975); *see also Harris v. Groth,* 99 Wn.2d 438, 449, 663 P.2d 113 (1983).

■ Although the trial court found that the County's alleged negligence was not the proximate cause of any injury to Noel, we can sustain the judgment on other grounds established by the pleadings and supported by the record. *See Bremmeyer Excavating, Inc. v. McKenna,* 44 Wn. App. 267, 268, 721 P.2d 567 (1986). We find that summary judgment is appropriate because Noel has failed to show by expert medical testimony that there is any issue of material fact as to the breach of any applicable standard of care. While Dr. Zend states that failure to contact a patient's attending physician *when requested to do so* would be such a breach, there are no facts in the record on the motion for summary judgment to show that Noel made such a request.[3] Dr. Zend also states that treatment of low back pain with aspirin alone is insufficient *if the patient does not respond,* but there is no expert testimony to show that Noel did not respond to such treatment. We conclude that Noel's failure to present expert medical testimony rebutting that of Dr. Robinson was sufficient justification for the trial court's order of summary judgment. *Swanson,* 18 Wn. App. at 651–52; *Shoberg,* 1 Wn. App. at 677; *Harris,* 99 Wn.2d at 449.

### COLLATERAL ESTOPPEL

Noel next assigns error to the trial court's denial of his motion for summary judgment on the issues of false arrest and false imprisonment. He contends that the County is collaterally estopped from "relitigating" these issues because of (1) the States's dismissal of the criminal charge against him and (2) the State's stipulation, in its prosecution of Denny and Quinn, that Noel's arrest at Frank's Market was without probable cause.

---

[3] The medical records submitted by the County show that on June 19 Katherine Noel called the jail and asked on her husband's behalf that Dr. Zend be contacted. Those records show that Dr. Zend was called the same day.

As a preliminary matter, we consider whether an arrest without probable cause is in fact a false arrest. Noel assumes that it is, while the County suggests that a lower standard of "reasonableness" is applicable in a cause of action for false arrest. The rule in Washington is that an arrest or imprisonment is false if it is unlawful. *Kellogg v. State,* 94 Wn.2d 851, 854, 621 P.2d 133 (1980). A warrantless felony arrest is unlawful, hence false, unless the arresting officer has "reasonable grounds to believe (1) that the offense committed is a felony, and (2) that the person apprehended committed the felony." *Kellogg,* 94 Wn.2d at 854. This is simply to say that a warrantless felony arrest is a false arrest unless the arresting officer has *probable cause* to arrest without a warrant. *See State v. Mustain,* 21 Wn. App. 39, 42, 584 P.2d 405 (1978) (probable cause to arrest without a warrant exists if the arresting officer has "a reasonable ground to believe the accused has committed a felony"); *see also State v. Cottrell,* 86 Wn.2d 130, 132, 542 P.2d 771 (1975). Thus, if it were established that Noel was arrested without probable cause, then it would follow that he was falsely arrested.

The purpose of collateral estoppel is to prevent relitigation of a particular issue or determinative fact after the party estopped has had a full and fair opportunity to present its case. *Seattle–First Nat'l Bank v. Cannon,* 26 Wn. App. 922, 927, 615 P.2d 1316 (1980). Before the doctrine is applicable, affirmative answers must be given to each of the following questions:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

*Rains v. State,* 100 Wn.2d 660, 665, 674 P.2d 165 (1983) (quoting *Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d

103, *review denied,* 78 Wn.2d 994 (1970)); *Cannon,* 26 Wn. App. at 927.

 Furthermore, only facts and issues "actually litigated and essential to the judgment" in the earlier action will be precluded by collateral estoppel. *Beagles v. Seattle–First Nat'l Bank,* 25 Wn. App. 925, 930, 610 P.2d 962 (1980); *see also Peterson v. Department of Ecology,* 92 Wn.2d 306, 312, 596 P.2d 285 (1979) (collateral estoppel precludes parties from relitigating issues which have been "actually and necessarily contested and determined" in prior actions). Findings made in the first action on which the judgment was not dependent are not conclusive in a later action. *Beagles,* 25 Wn. App. at 930 (citing Restatement of Judgments § 68, comment *o* (1942)). Collateral estoppel is thus confined to "ultimate facts;" that is, to "facts directly at issue in the first controversy upon which the claim rests". *Beagles,* 25 Wn. App. at 931. It does not extend to facts which are "merely collateral to the claim asserted." *Beagles,* 25 Wn. App. at 931; *see also Cannon,* 26 Wn. App. at 928.

The dismissal of the criminal charge against Noel was obviously not a "final judgment on the merits". *Rains,* 100 Wn.2d at 665; *Cannon,* 26 Wn. App. at 927. While the action against Denny and Quinn apparently did result in such a judgment, the issue of whether there was probable cause for Noel's arrest was clearly not "actually and necessarily contested" in that action, *Peterson,* 92 Wn.2d at 312; nor was it "essential to the judgment", *Beagles,* 25 Wn. App. at 930–31. The trial court in that action found that *even assuming* Noel's arrest to be unlawful, the police still had probable cause to arrest Denny and Quinn. The issue resolved in that proceeding was whether Denny and Quinn could successfully challenge their arrests based on the allegedly illegal arrest of Noel. Thus, collateral estoppel is inapplicable, and Noel's motion for summary judgment was properly denied.

## MOTION FOR DIRECTED VERDICT

At the close of the County's case, Noel made a motion for "judgment as a matter of law" or directed verdict on the issue of liability. The motion was denied. On appeal, Noel contends that since the County conceded that he was not a subject of the police investigation until the time of his arrest, the court should have determined, as a matter of law, that there was no probable cause for his arrest.[4]

■ Whether an arresting officer acted with probable cause is a question of fact for the jury unless the evidence establishes conclusively and without contradiction that the arrest was unlawful. *See Daniel v. State,* 36 Wn. App. 59, 62, 671 P.2d 802 (1983). A motion for a directed verdict may be granted only if it can be said, as a matter of law, that no evidence or reasonable inferences existed to sustain a verdict for the party opposing the motion. *Bender v. Seattle,* 99 Wn.2d 582, 587, 664 P.2d 492 (1983). In this case, the evidence that the police had reasonable grounds to believe that Noel had committed a felony at the time of his arrest at Frank's Market is as follows: (1) Noel was in the company of Fox, who was known to be the leader of a gang which had committed several armed robberies. (2) The police had been told that Fox was extremely "paranoid" and that he associated only with people whom he trusted completely. (3) A gun and a large quantity of cash were discovered on Fox's person at the time he and Noel were detained. We conclude that this evidence, while perhaps not overwhelming, was sufficient to go to a jury.

## JURY INSTRUCTIONS

Noel contends that the trial court erred in refusing to

---

[4]Noel also made a motion for "judgment as a matter of law" based on the same theory at the close of his own case. He assigns error to the trial court's denial of this motion, as well. However, this motion appears to be nothing more than a premature motion for directed verdict, and as such does not merit a separate discussion.

give his proposed instruction 6.[5] That instruction reads: "Whenever an arrest or imprisonment is shown to have been made without a warrant, it is presumed to be unlawful, and the burden rests on the person causing the detention to justify his action."

■ The proposed instruction is taken almost verbatim from *Larson v. Erickson,* 142 Wash. 236, 237, 252 P. 922 (1927). Nonetheless, we believe that it is no longer a correct statement of the law. By enacting RCW 10.31.100, the Legislature explicitly authorized police officers to make warrantless arrests when they have probable cause to believe that the person arrested has committed a felony. In so doing, the Legislature has declined to condition that authority upon the existence of exigent circumstances or to otherwise express a preference for arrest warrants in the case of felonies. Nor does the Fourth Amendment embody such a preference. *See United States v. Watson,* 423 U.S. 411, 423–24, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). In light of this, we conclude that a warrantless felony arrest in a public place is not presumed to be unlawful, and that the burden was on Noel, the plaintiff, to prove that his arrest was unlawful. Thus, the proposed instruction incorrectly states the law, and the trial court did not err in refusing it. *See Crossen v. Skagit Cy.,* 100 Wn.2d 355, 360, 669 P.2d 1244 (1983); *Sutton v. Shufelberger,* 31 Wn. App. 579, 581, 643 P.2d 920 (1982).

## SANCTIONS

■ Finally, the County contends that Noel's appeal is

---

[5]Noel also assigns error to the court's instruction 11. Although he failed to set out the instruction in his brief as required by RAP 10.4(c), we granted his motion to supplement his brief with the text of the challenged instruction. However, the argument contained in Noel's brief apparently pertains not to instruction 11, but to instruction 10. (The confusion is apparently due to the fact that at trial, instruction 10 was referred to as instruction 11, while instruction 11 was referred to as instruction 12.) Since Noel withdrew his exception to the court's instruction 11, that instruction is not subject to review. He has had not one, but two, chances to properly present instruction 10 for review, and has failed in each attempt. Consequently, we decline to review it. *See* RAP 10.4(c); *Thomas v. French,* 99 Wn.2d 95, 99–101, 659 P.2d 1097 (1983).

frivolous and that sanctions are appropriate under RAP 18.9. The standard for determining whether an appeal warrants the imposition of sanctions pursuant to RAP 18.9(a) was recently set forth as follows:

> In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 442–43, 730 P.2d 653 (1986) (quoting *Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499, 509, 716 P.2d 869 (1986) (Utter, J., concurring in part, dissenting in part)). We find that Noel's appeal raises debatable issues upon which reasonable minds might differ, and hence that sanctions are inappropriate in this case.

CONCLUSION

The judgment of the trial court is affirmed. In light of this disposition, it is unnecessary for us to reach the issue raised in the County's cross appeal.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied July 15, 1987.