[No. 54338–1.   En Banc.   January 14, 1988.]

STEPHEN A. WHITE, *Respondent,* v. KING COUNTY,
ET AL, *Defendants,* BOOTH GARDNER, *as
Governor,* ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Theresa L. Fricke, Assistant,* for appellants.

*Henry E. Lippek,* for respondent.

*Grover C. Trask II, District Attorney for the County of Riverside, California,* and *Henry P. Rupp III, Deputy,* amici curiae for appellants.

BRACHTENBACH, J.—In this interstate extradition matter, Stephen A. White challenged the legality of his arrest on Governor Booth Gardner's warrant of extradition and arrest. White maintained that he was not substantially charged with a crime in the state demanding his extradition, California. The trial court granted White's petition for habeas corpus; Governor Gardner and the State of Washington appealed. We reverse.

In February 1986, a criminal complaint was filed against White in a California court, charging him with grand theft. On February 24, 1986, White was arrested in Washington, but refused to waive extradition. In May 1986, the governor of California submitted an extradition request to Governor Gardner. The application for extradition annexed to the request indicated that the funds which White had allegedly

stolen had been invested by Leonard Gilbert in a limited partnership which White had formed to build a bowling alley. Attached to the request for extradition was: a copy of Cal. Penal Code § 487 (West Supp. 1987) defining the crime of grand theft; a copy of the amended felony complaint charging White with a violation of section 487, subdivision 1 of the Penal Code "in that on or about December 14, 1983 to and including October 27, 1984, in the County of Riverside, State of California, he did wilfully and unlawfully take money and personal property of a value exceeding . . . $400.00 . . . to wit . . . $300,000.00 . . . the property of Leonard Gilbert", Clerk's Papers, at 87; a copy of a court ordered felony arrest warrant; and other supporting papers, including an affidavit in support of extradition in which a supervising investigator with the Riverside County district attorney's office, Riverside, California, set forth the alleged facts relating to the theft. The governor of California certified all the documents as authentic and duly authenticated.

On July 17, 1986, Governor Gardner issued a warrant of arrest and extradition. White immediately sought declaratory and injunctive relief. The trial court then directed White to file a petition for a writ of habeas corpus, set a hearing date, and issued a temporary restraining order pending final resolution of the hearing.

On July 30, 1986, White filed a "motion" which the trial court treated as an application for a writ of habeas corpus. White argued that his case is controlled by *In re Varona*, 38 Wn.2d 833, 232 P.2d 923 (1951). There, this court held that the petitioner was not substantially charged with a crime in California because he could not, under that state's case law, be guilty of theft of funds of a partnership of which he was a partner.

Following the hearing, the trial court found *Varona* controlling and granted the petition for a writ of habeas corpus. The court permanently enjoined defendants from executing the extradition warrant. Subsequently, the trial court granted White statutory attorney fees, but rejected his request for 42 U.S.C. § 1988 attorney fees as a plaintiff

prevailing in a 42 U.S.C. § 1983 civil rights action.

Governor Gardner and the State of Washington appealed. White cross–appealed, seeking § 1988 attorney fees. Governor Gardner and the State moved to transfer their appeal to this court; this motion was granted.

## I

Interstate extradition is essentially a federal matter governed by article 4, section 2, clause 2 of the United States Constitution (the Extradition Clause) as implemented by 18 U.S.C. § 3182. *California v. Superior Court,* __ U.S. __, 96 L. Ed. 2d 332, 339–40, 107 S. Ct. 2433 (1987) (hereafter *Smolin*); *Michigan v. Doran,* 439 U.S. 282, 288, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978); *State ex rel. Boutwell v. Coughlin,* 90 Wn.2d 835, 838, 586 P.2d 1145 (1978). The Extradition Clause creates a mandatory duty to deliver up fugitives upon proper demand with no discretion residing in the governor or courts of the asylum state; the federal courts have the power to compel state governors to extradite fugitives. *Puerto Rico v. Branstad,* __ U.S. __, 97 L. Ed. 2d 187, 107 S. Ct. 2802 (1987). The clause provides:

> A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

U.S. Const. art. 4, § 2, cl. 2. The purpose of the Extradition Clause is "to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." *Doran,* at 287; *see In re Anthony,* 198 Wash. 106, 110, 87 P.2d 302 (1939).

Where adopted, the Uniform Criminal Extradition Act, 11 U.L.A. 59 *et seq.* (1974), also governs state extradition procedures. *Doran,* at 288–89. Washington has adopted the Uniform Criminal Extradition Act. *See* RCW 10.88.

Although Washington's summary extradition procedure operates exclusively between governors, the alleged fugitive

may test the validity of his arrest by petitioning for a writ of habeas corpus. RCW 10.88.290; *Boutwell,* at 839. In accordance with the summary nature of extradition proceedings, judicial review of the governor's action is limited to seeing that the prerequisites to extradition are met. *Boutwell,* at 839–40; *In re Summers,* 40 Wn.2d 419, 420, 243 P.2d 494 (1952). The court

> can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Doran,* at 289.

The only prerequisite at issue here is whether White has been substantially charged with a crime committed in California, as required by the Extradition Clause and RCW 10.88.220. While we note that in its recent decisions in *Doran* and *Smolin* the United States Supreme Court used the term "charged" rather than "substantially charged", RCW 10.88.220, which is part of the Uniform Criminal Extradition Act approved by the Court in *Doran,* uses the term "substantially charged." We will use the "substantially charged" language, but emphasize that the key matter here is the interpretation given the prerequisite by the United States Supreme Court. We are obliged to follow that Court's interpretation.

The Court's opinion in *Smolin* compels us to reassess *Varona.* As noted, in a brief opinion the court in *Varona* held that the petitioner, who was charged by California with theft from his partnership, was not substantially charged with a crime. The court said: "It appears to be the settled law of the state of California that a partner cannot be guilty of theft of the funds of the partnership of which he is a member." (Citations omitted.) *Varona,* at 834.

In *Smolin,* a California court had modified a California decree which had awarded custody of two children to the mother, and awarded custody to the father instead. After

obtaining a warrant to obtain custody of the children, the father and his father picked the children up in Louisiana without the mother's consent. Subsequently the two men were charged with violating a Louisiana kidnapping statute, and the governor of Louisiana demanded extradition. Ultimately, the California Supreme Court upheld a lower court's issuance of a writ of habeas corpus blocking the extradition warrants. The California Supreme Court reasoned that the California custody decrees were properly considered by the lower court, that under the Parental Kidnaping Prevention Act of 1980 (28 U.S.C. § 1738A) the California decrees conclusively established that the father was the lawful custodian of the children, and that under Louisiana law the lawful custodian could not be guilty of kidnapping children in his custody.

The United States Supreme Court reversed. The Court observed that the only prerequisite in question was whether the petitioners had been charged with a crime in Louisiana. The Court held that because the Louisiana information was in proper form and a supporting affidavit set forth facts clearly satisfying each element of the crime of kidnapping as defined by the Louisiana statute, the California court was prevented by the Extradition Clause and 18 U.S.C. § 3182 from refusing to permit extradition of the men to Louisiana.

The Court reiterated the policy involved:

> "If more were required it would impose upon courts, in the trial of writs of habeas corpus, the duty of a critical examination of the laws of States with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the States and fruitful of miscarriages of justice. The duty ought not be assumed unless it is plainly required by the Constitution, and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance."

*Smolin,* 96 L. Ed. 2d at 343 (quoting *Pierce v. Creecy,* 210

U.S. 387, 405, 52 L. Ed. 1113, 28 S. Ct. 714 (1908)).

Here Cal. Penal Code § 487(1) defines grand theft as theft "[w]hen the money . . . or personal property taken is of a value exceeding four hundred dollars ($400) . . ." Clerk's Papers, at 85. The documents accompanying the extradition request include the California felony arrest warrant and the amended complaint charging White with grand theft in violation of Cal. Penal Code § 487, in that he willfully and unlawfully took money and personal property of a value exceeding $400, that is, $300,000, the property of Leonard Gilbert.

Under *Smolin,* the felony arrest warrant and the amended complaint on their face are clearly sufficient to satisfy the prerequisite that White be substantially charged with a crime against the law of California. These charging documents set forth facts clearly satisfying each element of the crime of grand theft as defined by the California statute.

White argues, however, that this court should consider the supporting documents explaining that the allegedly stolen funds had been invested in a limited partnership which White had formed to build a bowling alley. He maintains that we should then adhere to *Varona* and follow California case law which, he contends, holds that theft of partnership funds is not a crime.

Initially, we note that the opinion in *Smolin* is unclear about the effect of documents, other than the charging documents, which accompany an extradition request and set forth additional factual allegations. However, even assuming that under *Smolin* we may consider all information in all documents accompanying the extradition request, we decline to adhere to *Varona.*

█ First, there seems to be some uncertainty about the status of the argument that theft of partnership funds is not a crime in California. *See generally People v. Sobiek,* 30 Cal. App. 3d 458, 106 Cal. Rptr. 519 (in an extensive analysis the court reasoned that language in California State Supreme Court opinions to the effect that no crime

occurred was dicta; held that theft of partnership funds by a partner could constitute a crime), *review denied* (Apr. 4, 1973), *cert. denied,* 414 U.S. 855 (1973); *People v. Pedersen,* 86 Cal. App. 3d 987, 150 Cal. Rptr. 577 (1978), *review denied* (Jan. 24, 1979). In order to determine whether theft of partnership funds is a crime in California, we would have to decide the meaning of *Sobiek,* a matter complicated by the fact that the California Supreme Court denied review of the case. We believe it is the province of the California State Supreme Court to resolve the uncertainty. Interestingly, the extensive arguments presented in the parties' briefs and in the amicus brief serve to emphasize that we would have to authoritatively decide California law—a proposition clearly contrary to the narrow scope of review defined in *Smolin.*

Second, there appears to be a factual question whether White used a partnership theory as a scheme to defraud investors. If he did so, a defense to criminal charges based upon the partnership entity may not be available in any event. *See People v. Jones,* 36 Cal. 2d 373, 224 P.2d 353 (1950). Resolution of factual questions is clearly beyond the scope of judicial review in this matter. *Michigan v. Doran,* 439 U.S. 282, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978); *California v. Superior Court,* ___ U.S. ___, 96 L. Ed. 2d 332, 107 S. Ct. 2433 (1987).

Finally, although the Court in *Smolin* did not address this precise question, it may be that an inquiry into California case law regarding theft of partnership property is beyond the authority of the reviewing court, as was the California Supreme Court's consideration of the Parental Kidnaping Prevention Act and the California custody decrees in *Smolin.*

We conclude that White was substantially charged with a crime against the law of California. While the United States Supreme Court distinguished *Varona* in *Smolin* rather than expressly disapproving *Varona, Smolin,* 96 L. Ed. 2d at 342, we do not read the Court's opinion as thereby approving *Varona* as White appears to urge. In light of our

analysis and the decision in *Smolin,* we overrule *In re Varona,* 38 Wn.2d 833, 232 P.2d 923 (1951).

White is not without further recourse. The United States Supreme Court in *Smolin* said that there was nothing in the record there to suggest that the fugitives were not entirely correct in their challenges to the kidnapping charge, but that it was for the Louisiana courts to do justice in the case. *Smolin,* 96 L. Ed. 2d at 343. Similarly, White may present challenges to the criminal charges in California, which is best suited to decide them. Moreover, White is still under the protection of the federal constitution. *See Biddinger v. Commissioner of Police,* 245 U.S. 128, 133, 62 L. Ed. 193, 38 S. Ct. 41 (1917).

## II

The parties agree that before White can be extradited, it must be established that California has shown probable cause to arrest him. A number of courts agree, reasoning that, since cases requiring that state criminal procedure conform to the Fourth Amendment (*e.g., Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961)) have been handed down, the Fourth Amendment probable cause requirement applies in the context of extradition proceedings. The courts, both state and federal, have split widely, however, on the question, with a variety of approaches employed even among the courts recognizing that there must be a probable cause showing. *See generally Doran,* at 291 n.2 (Blackmun, J., concurring in the result); Annot., *Necessity That Demanding State Show Probable Cause To Arrest Fugitive in Extradition Proceedings,* 90 A.L.R.3d 1085 (1979).

White maintains that probable cause has not been shown because theft of partnership funds by a partner is not a crime in California. As discussed, we do not decide the question. White also argues that the arrest warrant must contain an express finding of probable cause; if it does not, he maintains, the asylum state should scrutinize the charging documents to determine whether a detached and neu-

tral magistrate made a determination of probable cause.

In *Michigan v. Doran, supra,* the United States Supreme Court did not directly decide that probable cause must be established in extradition proceedings, but did hold that "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." *Doran,* at 290. The Court said that the Extradition Clause "never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." *Doran,* at 288. The Court reasoned that the courts of the asylum state are bound to accept the demanding state's judicial determination because the demanding state's proceedings are clothed with a presumption of regularity, and the Extradition Clause and established principles of comity support the conclusion that the courts of the asylum state are without power to review a determination of probable cause in the demanding state. *Doran,* at 290.

Here, a California municipal court judge issued a felony warrant for White's arrest. The warrant does not expressly state that probable cause has been found. There has, however, necessarily been a judicial determination that probable cause existed for White's arrest. Cal. Penal Code § 813 (West 1985) requires that a magistrate find "reasonable ground to believe that the defendant had committed" the offense complained of. "Reasonable ground" is equivalent to "probable cause." *People v. Sesslin,* 68 Cal. 2d 418, 439 P.2d 321, 67 Cal. Rptr. 409 (1968), *cert. denied,* 393 U.S. 1080 (1969); *Doran,* at 289. Because the California arrest warrant could only issue upon a finding of probable cause to arrest, a finding of probable cause can be inferred from the warrant. *Cf. Vetsch v. Sheriff of Spokane Cy.,* 14 Wn. App. 971, 546 P.2d 927 (1976) (Idaho demand for nonfugitive extradition (*see* RCW 10.88.250) included warrant of arrest which could only issue upon a finding of probable cause to arrest; this determination entitled to recognition in

Washington; no independent showing in Washington of probable cause required). In light of the principles and holding enunciated in *Doran,* we conclude that the California arrest warrant satisfies any probable cause requirement.

We hold that White was substantially charged with a crime against the law of California. We reverse the trial court's order granting the petition for a writ of habeas corpus. From our disposition of this appeal, it follows that White's request for attorney fees is denied; in any event, we do not perceive this to be a proper case in which to award 42 U.S.C. § 1988 attorney fees.

Reversed.

PEARSON, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.