51 P.3d 837 (2002)
Kevin L. STALTER, Appellant,
v.
STATE of Washington; Washington State Patrol, a political subdivision of the State of Washington; Jeremy Reid, Badge No. 562, individually and in his official capacity as a member of the Washington State Patrol; and Pierce County, a political subdivision of the State of Washington, Respondents.
David Brooks, a single person, Appellant,
v.
Pierce County, a political subdivision of the State of Washington; and "John Doe," Respondents.
Nos. 27118-4-II, 27351-9-II.
Court of Appeals of Washington, Division 2.
August 9, 2002.
*839 Liam Michael Golden, Law Offices of Monte Hester, Tacoma, WA, for Appellants.
Ronald La Mar Williams, Deputy Pros. Atty., Tacoma, WA, for Respondents.
*838 SEINFELD, J.
This case requires us to determine if a county has a duty to confirm the identity of a person detained in its jail under authority of an arrest warrant after the detainee claims misidentification. Kevin Stalter and David Brooks each made this claim, and they allege that Pierce County failed to respond. After their eventual release, they each sued the County, asserting, inter alia, false imprisonment. The trial court dismissed their claims on summary judgment.
We hold that once a county is on notice that a detainee in its custody may not be the person described in the relevant arrest warrant, the county has a duty to take further reasonable steps to verify the detainee's identity. As Stalter and Brooks have raised questions of material fact as to the County's response, we reverse and remand their negligence and false imprisonment claims for trial. We affirm the dismissal of Brooks' 42 U.S.C. § 1983 claim.

FACTS

Stalter v. Pierce County
On Saturday, August 9, 1997, Washington State Trooper Jeremy Reid stopped Kevin Stalter for a driving infraction and arrested him under authority of a warrant for Robert Stalter. The warrant did not indicate any aliases for Robert but a dispatcher informed Reid that Robert was known to use the alias "Kevin." SCP at 40.[1]
Stalter told Reid that he was not Robert and explained that Robert was his brother. Further, Stalter was 4 inches taller, 27 pounds heavier, had a different eye color, and had a different birth date than the person described in the warrant. Nonetheless, Reid transported Stalter to the Pierce County Jail and the jail, relying on Reid's assurance that the detainee was in fact Robert Stalter, booked him under the name of Kevin Stalter.
Stalter told the booking officer two or three times that he was not Robert, again explaining that Robert was his brother. The booking officer had never seen anyone so adamant about not being the person named in the warrant and called a senior officer for assistance. The senior officer told Stalter that he would be booked and then it was up to IDENT[2] or the courts to determine who he was.
Jail staff escorted Stalter to court two days later for arraignment. There, Robert Stalter's probation officer informed the court that the detainee was not Robert Stalter. The court then ordered Stalter released.
Stalter sued multiple parties, alleging multiple theories. Only the false imprisonment and negligence claims against the County are at issue here.
The County moved for summary judgment; supporting its motion with the declaration of Lt. James Blanchard, a shift commander and supervisor at the jail. Blanchard stated that the booking officers are required only to "determine that the arrest and confinement of each prisoner is being accomplished by a duly authorized officer" and that jail staff may not release prisoners booked under a mistaken identity unless they receive a court order "after proper identification is established at the prisoner's arraignment." SCP at 38.
*840 Stalter responded with a declaration from a booking officer who indicated that while it is not unusual for detainees to claim misidentification initially, they usually admit to being the person named in the warrant after they see it. The booking officer explained that the jail staff's usual procedure is to obtain the detainee's identification information from the warrant and from the detainee and then to forward the information to IDENT, which photographs and fingerprints the detainee.
The booking officer believed that IDENT positively identified detainees by examining their fingerprints; he was unaware of any jail policy or procedure requiring booking officers to confirm the booking information.
The booking officer said that there was a booking file on Robert Stalter, which included a photograph, and that although he could have requested Robert's records, he was unaware of any policy requiring him to do so. He indicated that even if he had compared the records and discovered the discrepancy, he would not have had the authority to take any action as the booking decision was entirely up to his supervisor and the arresting officer.
Stalter also submitted portions of the jail policy and procedure manual. The manual requires booking officers to obtain 18 pieces of general information from the detainee "[i]n order to provide for a positive identification of the person being admitted."[3] SCP at 114. The manual further requires photographing and fingerprinting of the detainee during the booking process; this information goes into the detainee's custody file. The manual does not address how to respond to a detainee's assertion of misidentification.
In granting the County's summary judgment motion, the trial court found that (1) Reid, the arresting officer, was properly authorized and properly presented Stalter to the jail; (2) the County had followed its booking policies, including its policy that the court was to resolve identity questions; and (3) the County had no duty to investigate Stalter's identity. Stalter appeals.

Brooks v. Pierce County
On Friday, October 9, 1998, an officer from the Fife Police Department stopped David W. Brooks Jr. for a traffic violation and subsequently arrested him under a warrant out of North Carolina. Brooks had the same name, was the same race and gender, and had the same birth date as the person named in the warrant.
Brooks immediately told the officer that he had never been to North Carolina and was not the person named in the warrant. He continued to assert misidentification as the officer transported him to the Fife Police Station. At the station, a dispatcher confirmed the warrant and informed the officer that North Carolina wanted to extradite Brooks.
Brooks subsequently was transferred to the Pierce County Jail where he continued to claim misidentification. In response, the booking officer told Brooks that they would do a "positive identification" and would release him if what he said was true. BCP at 97.
Brooks was fingerprinted, photographed, and transferred to a holding cell. The officer escorting Brooks to the holding cell again told him that there would be a positive identification and that he would be released if what he said was true.
On October 12, the Monday following his arrest, Brooks appeared in court. He informed his assigned counsel that he was not the person named in the warrant, but, according to the transcript from the hearing that day, Brooks' counsel did not advise the court of the misidentification claim.
*841 The court ordered that Brooks be held without bail and set a court date for November 12. According to Brooks' declaration, he did not have an opportunity to speak to the court. Following the hearing, Brooks' assigned counsel told him that he had to obtain private counsel, which Brooks did.
Also on October 12, the Law Enforcement Support Agency (LESA)[4] notified North Carolina that Brooks was in custody; on October 14, it notified North Carolina that Brooks had refused to waive extradition. LESA then requested certified copies of the warrant, photographs, and fingerprints. These did not arrive until November 2, after LESA had submitted a second request at the prosecutor's behest.
At some point, Brooks told a corrections officer about the misidentification and he provided the officer with various unspecified legal documents. But neither this officer nor any other County employee contacted Brooks about his misidentification claim until after November 2, when someone from the jail took a second set of fingerprints.
On November 3, IDENT compared Brooks' fingerprints with the North Carolina fingerprints and determined that Brooks was not the person named in the warrant. The prosecutor immediately moved for his release, which the court granted.
Brooks then brought this action, asserting a Fourteenth Amendment Due Process claim under § 1983, false imprisonment, and negligence. The County moved for summary judgment.
In opposition to summary judgment, Brooks, like Stalter, submitted portions of the jail policy and procedure manual. He also submitted part of the deposition of George Wigen, the Corrections Bureau Chief for the Pierce County Sheriff Department, who said that he was unaware of any policy requiring booking officers to confirm the detainee's identity or the information on the booking information sheet. Wigen was also unaware of any policy or procedure dealing with a detainee's assertion of misidentification.
In addition, Brooks submitted depositions from several booking officers who testified that it was not unusual for detainees to claim misidentification and that they did not treat such detainees any differently. They did not believe they had any responsibility to verify a detainee's identity beyond obtaining the required information from the detainee or the arresting officer, obtaining photographs and fingerprints, and sending the fingerprints to IDENT for positive identification even when the detainee asserted misidentification.
The booking officers explained that IDENT and the court had the responsibility to resolve misidentification issues and that it was not unusual for jail staff to hear nothing from IDENT after sending it the required materials. Booking officer Malcolm Stewart said that the booking officer's only obligation is to ensure that the identity of any particular detainee remains the same during that detainee's entire stay in jail.
An IDENT employee, Marie Oberg, explained that IDENT physically retrieves the fingerprint cards from booking twice a day and uses that information to determine if the detainee has an existing record. If the detainee's fingerprints are in the computer record system, IDENT compares the new prints with the existing prints. But the IDENT records only include fingerprint data on those individuals the City of Tacoma or Pierce County law enforcement have previously processed.
If the detainee's name is not in IDENT's records, IDENT scans the new prints and the computer presents 15 potential matches for comparison. If there is no match for the detainee's prints, IDENT simply adds the detainee's prints to the system; it does not take any other action to verify the detainee's identity.
Brooks also provided depositions from LESA warrant specialists who described their procedures for processing fugitive warrants. When a detainee refuses to waive *842 extradition, LESA automatically requests a certified copy of the warrant, fingerprints, and photographs of the person named in the warrant from the jurisdiction issuing the warrant; if the issuing jurisdiction fails to respond to these requests, which is not unusual, LESA follows up on its request only if an authorized agency directs it to do so.
In granting summary judgment for the County, the trial court made the following oral ruling:
[T]here has been no showing of a constitutional violation set out by this policy, or booking policy or practice. Mr. Brooks was held for three days ... and was brought properly before the Court within a reasonable time, and thereafter Mr. Brooks was held under a valid court order.
These acts cut off liability for the county. As soon as the authorities knew that Mr. Brooks was not the same individual when the fingerprints were compared, he was released, and that was approximately 20 to 22 days after his arraignment, and the record is clear that he had the same first name, middle name, last name and junior, as well as date of birth at the time that he was stopped by the Fife Police, and in fact, was the same race as the individual from the North Carolina warrant.
BRP at 20-21. Brooks appeals.

DISCUSSION

I. NEGLIGENCE CLAIMS
To sustain a negligence claim, a plaintiff must present evidence showing: (1) the existence of a duty; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996). In reviewing a summary judgment order, we engage in the same inquiry as the trial court and consider "only evidence and issues called to the attention of the trial court[s]." RAP 9.12; see also Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998); Smith v. Myers, 90 Wash.App. 89, 92, 950 P.2d 1018 (1998).
Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Folsom, 135 Wash.2d at 663, 958 P.2d 301. We do not resolve disputed questions of fact unless, considering all the evidence and reasonable inferences in the light most favorable to the nonmoving party, reasonable minds could reach but one conclusion from the evidence presented. Van Dinter v. City of Kennewick, 121 Wash.2d 38, 47, 846 P.2d 522 (1993); Smith, 90 Wash.App. at 93, 950 P.2d 1018.
A. Duty
Whether a duty exists is a question of law. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999). "A duty can arise either from common law principles or from a statute or regulation." Doss v. ITT Rayonier, Inc., 60 Wash.App. 125, 129, 803 P.2d 4 (1991); see also Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982).
It is clear that an arresting officer has a duty to make a reasonable effort to confirm the identity of a person detained under a warrant if there is any doubt as to the detainee's identity. State v. Smith, 102 Wash.2d 449, 454, 688 P.2d 146 (1984). See also, RESTATEMENT (SECOND) OF TORTS § 125 cmt. a, illus. 1, 5 (1965). But the question here is whether that same duty extends to the agency that takes custody of the detainee from the arresting officer or agency.
Stalter and Brooks contend that this duty arises from the County's policies and that it is articulated in Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The County denies that such a duty exists, asserting that WAC 289-16-200(1)(a) limits its responsibility to ensuring that a duly authorized officer places the detainee into custody. The County argues that the duty to identify a detainee lies with the detainee's attorney, the prosecutor, and the courts. See WAC 289-16-250 (court order necessary for the County to release a detainee).
Stalter and Brooks have not shown that the County's manual requires booking officers to verify the detainee's identity. Further, IDENT can positively identify only *843 those detainees whose information is contained in its record system.
But, conversely, the County has not shown that the administrative regulations it cites are incompatible with a duty to make a reasonable effort to verify a detainee's identity after the County is on notice of a claim of misidentification. Thus, although the County's policies and rules do not establish a duty, they also do not shield the County from a duty that might arise from another source.
In support of their argument that the County has a common law duty to identify detainees, Stalter and Brooks cite Baker. The Baker Court held that claims of mistaken identity are questions of fact for the jury, but it noted that "the official charged with maintaining custody of the accused named in the warrant" is not constitutionally required "to perform an error-free investigation of such a claim." 443 U.S. at 146, 99 S.Ct. 2689. But as Baker dealt with constitutional, not negligence, claims, it is not dispositive of the issues before us.
Stalter and Brooks also rely on Tufte v. City of Tacoma, 71 Wash.2d 866, 431 P.2d 183 (1967), to argue that the County had a duty to release them once it knew or should have known they were not the persons named in the warrants.
In Tufte, the Tacoma Police arrested and detained Tufte at the city jail for being intoxicated; meanwhile, they ignored ever increasing evidence that the cause of Tufte's suspicious behavior was diabetes, not imbibing. 71 Wash.2d at 869, 431 P.2d 183. Tufte sued the City and a jury found in his favor.
On appeal, the city argued that it was not liable because the arrest was lawful. Tufte, 71 Wash.2d at 870, 431 P.2d 183. But the Supreme Court affirmed the jury verdict, holding that the initial justification for taking Tufte into custody evaporated once the City knew or should have known that this justification no longer existed; it then had a duty to release him from confinement. Tufte, 71 Wash.2d at 870, 431 P.2d 183.
The County argues that the Tufte holding applies only to an arresting agency's liability. We disagree. By approving of the initial arrest and then finding the continued detention to be increasingly unreasonable as the City received more information, the Tufte Court emphasized the City's custodial function, as opposed to its arresting function. 71 Wash.2d at 871-72, 431 P.2d 183.
Tufte is persuasive authority for the proposition that a detention facility does not have blanket immunity from liability for false imprisonment. In other words, jail authorities cannot merely ignore evidence indicating an erroneous detention and point to some other participant in the detention or justice system as the responsible party.
We conclude that once jail management is on notice that it may be holding a detainee under authority of a warrant erroneously, it has a duty, at a minimum, to investigate further. This is consistent with the practical realities of the situation. By definition, a detainee lacks access to community resources. Thus, jail administration is often in the best position to discover and resolve misidentification issues.
B. Breach
Both Stalter and Brooks have presented sufficient evidence to create a question of fact as to breach.
The summary judgment record shows that Stalter asserted misidentification, he did not match the physical description on the warrant, and he told the booking officer and others that the person they wanted was his brother. The record also shows that the booking officers could easily have retrieved Robert Stalter's records and resolved the identity issue. Despite this, the County did not vary from its regular procedures. Whether this response was appropriate is an issue of fact for the jury.
Brooks also has presented sufficient facts to raise a question of fact as to the reasonableness of the County's response. He alleged that he repeatedly asserted he was not the person named in the warrant; that jail personnel told him his identity would be verified and he would be released if he was the wrong person; that jail personnel processed his fingerprints and photographs in the usual manner, by sending them to IDENT to check *844 for any existing matches; and that no one made an official notation of his misidentification claim. The reasonableness of this response is a question of fact for the jury.
Further, even after Brooks' initial court appearance, he continued to assert misidentification. We see no basis to cut off the County's potential liability for Brooks' wrongful continued detention as of the date of the Court hearing where, as here, there is evidence that the County's actions potentially contributed to a delay in Brooks' release. See Kellogg v. State, 94 Wash.2d 851, 854-57, 621 P.2d 133 (1980). Again, the reasonableness of the County's response is a question of fact for the jury.
C. Injury and Causation
The question of proximate cause is for the jury unless the facts are undisputed and there is only one logical inference. Bernethy, 97 Wash.2d at 935, 653 P.2d 280. Here, a jury could find that if the booking officer or his supervisor had examined Robert Stalter's booking file and allowed Reid, the arresting officer, an opportunity to review the file, Stalter would have been released immediately rather than two days later. Similarly, a jury could find that the County's failure to note that Brooks was asserting misidentification on his booking materials, to timely follow up on the information it requested from North Carolina, or to take other steps to verify Brooks' identity contributed to his continued detention. Thus, the trial courts erred when they dismissed the negligence claims.

II. FALSE IMPRISONMENT CLAIMS
"An arrest or imprisonment is false if it is unlawful." Kellogg, 94 Wash.2d at 854, 621 P.2d 133. "Unlawful imprisonment is the intentional confinement of another's person, unjustified under the circumstances." Kellogg, 94 Wash.2d at 856, 621 P.2d 133. Violation of one's right of personal liberty or restraint without legal authority are "[t]he gist" of an action for false imprisonment. Bender v. City of Seattle, 99 Wash.2d 582, 591, 664 P.2d 492 (1983). The issue here is whether Stalter and Brooks have raised a question of material fact as to whether their restraint was justified under the circumstances.
The County first asserts that the "lawfulness of [the Appellants'] arrests ... speaks to the lawfulness of their subsequent imprisonment." Br. of Respondent at 20. It also asserts that because the officers had probable cause to arrest Brooks and because the court apparently found probable cause to detain him, his false imprisonment claims fail. We disagree.
Although probable cause is generally a defense to false imprisonment, Jacques v. Sharp, 83 Wash.App. 532, 536, 922 P.2d 145 (1996), lawful arrest does not necessarily "foreclose consideration of facts surrounding the subsequent imprisonment." Kellogg, 94 Wash.2d at 854, 621 P.2d 133; Tufte, 71 Wash.2d at 870, 431 P.2d 183. "`It is the general, if not the universal, rule that, when a person is arrested and placed in jail, and is detained there for more than a reasonable time, the detaining [agency] is liable in an action for damages.'" Kellogg, 94 Wash.2d at 854, 621 P.2d 133 (quoting Housman v. Byrne, 9 Wash.2d 560, 561, 115 P.2d 673 (1941)); see also Tufte, 71 Wash.2d at 870, 431 P.2d 183.
As established in Tufte, an initial justification for the detention does not necessarily shield the County from claims of false imprisonment based on the erosion of that justification over time. 71 Wash.App. at 871-72, 863 P.2d 113. Further, the plaintiff in a false imprisonment claim must show merely that the defendant intended to confine the plaintiff, not that the defendant intended to do so without legal authority.
As we discussed above, the Baker Court held that a claim for false imprisonment is not sufficient to establish a constitutional violation. But Baker did not address whether a detainee could assert a claim for false imprisonment under state law. 443 U.S. at 144, 99 S.Ct. 2689. Here, a jury could find that the County detained Stalter or Brooks beyond a reasonable time. Thus, the trial courts erred when they dismissed the false imprisonment claims.

*845 III. CONSTITUTIONAL CLAIM
Brooks asserts a violation of his Fourteenth Amendment Due Process rights under § 1983. He argues that the County's policy or practice of not identifying detainees who assert misidentification led to his prolonged detention in violation of his Due Process rights.
To establish a § 1983 claim, Brooks must:
(1) identify a specific policy or custom; (2) demonstrate that the policy was sanctioned by the official or officials responsible for making policy in that area of the [County's] business; (3) demonstrate a constitutional deprivation; and (4) establish a causal connection between the custom or policy and the constitutional deprivation.
Baldwin v. City of Seattle, 55 Wash.App. 241, 248, 776 P.2d 1377 (1989). The absence of evidence of any of these elements requires dismissal of the action. Baldwin, 55 Wash.App. at 248, 776 P.2d 1377.
The question here is whether Brooks has demonstrated a constitutional deprivation. The Fourteenth Amendment does not protect against all deprivations of liberty; it protects only against deprivations of liberty accomplished "without due process of law." Baker, 443 U.S. at 145, 99 S.Ct. 2689. Thus, Brooks must establish a question of fact as to whether he was afforded adequate procedural process.
Because Brooks was arrested under a warrant issued in another state, the Uniform Criminal Extradition Act, Chapter 10.88 RCW, governs the required process. White v. King County, 109 Wash.2d 777, 780, 748 P.2d 616 (1988). Brooks was entitled to a hearing as soon as possible after his arrest, which he received. RCW 10.88.330(1). Because he did not waive extradition, he was also entitled to challenge his extradition by means of a writ of habeas corpus and the court was required to provide him with sufficient time to do so. RCW 10.88.290; White, 109 Wash.2d at 780-81, 748 P.2d 616; In re Wheeler, 46 Wash.2d 277, 278, 280 P.2d 673 (1955); In re Jeffries, 15 Wash.App. 302, 304-305, 548 P.2d 594 (1976). The petitioner in this type of challenge is limited to asserting that the extradition prerequisites were not met. White, 109 Wash.2d at 781, 748 P.2d 616.[5]
Although Brooks asserts that the County's actions delayed his release, he does not claim a violation of the statutory process related to a fugitive warrant. Nor does he show a violation of the County's policies and practices regarding verification of a detainee's identity. Finally, as the Baker Court noted, a state law tort claim alone cannot be the basis of a § 1983 claim. 443 U.S. at 146, 99 S.Ct. 2689. Accordingly, Brooks fails to establish a constitutional deprivation, and the trial court properly dismissed his § 1983 claim.
Thus, we affirm the dismissal of Brooks' § 1983 claim, reverse the summary judgment dismissal of Stalter's and Brooks' negligence and false imprisonment claims, and remand those claims for trial.
We concur: ARMSTRONG, J., and HUNT, A.C.J.
NOTES
[1] The record in this consolidated appeal comprises the following: (1) Stalter's Clerk's Papers (SCP); (2) Brook's Clerk's Papers (BCP); (3) Stalter's Reports of Proceedings (SRP); and (4) Brooks' Report of Proceedings (BRP).
[2] IDENT is a County department that maintains a fingerprint and photograph database of arrestees.
[3] Specifically, the booking officers are to obtain: (1) name and aliases; (2) current or last known address; (3) date, duration of confinement, and a copy of the court order or other legal basis for commitment; (4) name, title, and signature of delivering officer; (5) specific charges; (6) court order or remand order for juvenile; (7) sex; (8) age; (9) date of birth; (10) place of birth; (11) race; (12) present or last place of employment; (13) health status; (14) emergency contact; (15) telephone calls made by arrestee at time of admission; (16) Social Security number; (17) notation of cash and all property; and (18) additional information related to special custody requirements, service needs, or other identifying information.
[4] LESA is the agency, funded jointly by the Pierce County Sheriff Department and the Tacoma Police Department, that is responsible for processing all fugitive warrants for the City of Tacoma and the County, including the Fife Police Department.
[5] The court is limited to deciding:

"(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive."
White, 109 Wash.2d at 781, 748 P.2d 616 (quoting Michigan v. Doran, 439 U.S. 282, 289, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978)).