86 P.3d 1159 (2004)
151 Wash.2d 148
Kevin L. STALTER, Respondent,
v.
STATE of Washington; Washington State Patrol, a political subdivision of the State of Washington; Jeremy Reid, Badge No. 562, individually and in his official capacity as a member of the Washington State Patrol, Defendants,
and
Pierce County, a political subdivision of the State of Washington, Petitioner.
David Brooks, a single person, Respondent,
v.
Pierce County, a political subdivision of the State of Washington; and "John Doe," Petitioners.
No. 73088-1.
Supreme Court of Washington, En Banc.
Argued September 9, 2003.
Decided March 18, 2004.
*1160 Ronald La Mar Williams, Pierce Co. Pros Office, Tacoma, for Petitioner.
Liam Michael Golden, Office of the Prosecuting Attorney, Chehalis; Lance M. Hester, Tacoma, for Respondent.
ALEXANDER, C.J.
We granted review of a Court of Appeals decision reversing summary judgments in two Pierce County Superior Court cases. In each case, a person who was held in the Pierce County Jail under an arrest warrant issued for another person brought suit against Pierce County claiming damages for the detention. The principal issue before us in these consolidated cases is whether the Court of Appeals wrongly concluded that jail personnel have a duty to investigate the identity of a jail detainee once they have been put on notice that they may be holding the wrong individual.
We hold that the Court of Appeals erred when it concluded that mere notice to jail personnel that they may be holding the wrong individual imposes a duty on them to investigate claims of misidentification. We determine, however, that jail personnel do have a duty to take steps to promptly release a detainee once they know or should know, based on information provided to them, that the person they are holding is not the person named in the arrest warrant. We, therefore, affirm the Court of Appeals in part and reverse it in part.

I.

Stalter v. State
On August 9, 1997, Kevin Lee Stalter was arrested by a Washington State Patrol trooper under a Pierce County warrant that had been issued for the arrest of one Robert John Stalter.[1] Although the warrant did not set forth any aliases for the person named in the warrant, a printout from a state patrol dispatcher listed the name "Kevin Lee Stalter" as an alias for Robert John Stalter. Kevin Stalter indicated to the arresting trooper that he was not Robert John Stalter but explained that he had a brother with that name who had used the alias "Kevin" in the past. Kevin Stalter's physical appearance differed from the individual described in the warrant by 27 pounds, four inches in height, and eye color. Furthermore, Kevin Stalter's birth date differed by over three years from the birth date listed on the warrant for Robert John Stalter.
After his arrest, Kevin Stalter was brought to the Pierce County Jail for booking. While at the jail, Stalter was adamant that he had been misidentified. Consequently, the booking officer asked a senior officer for advice on how to deal with the situation. Stalter was then booked under the name Kevin Lee Stalter, rather than Robert John Stalter.
At the time of Kevin Stalter's booking there was a file relating to Robert John Stalter at the jail. This file contained Robert John Stalter's photograph and information regarding the subject's birth date, height, weight, hair color, eye color, and scars. The jail booking officer was provided with a copy of the warrant under which the arrest of *1161 Kevin Stalter had been effected, and it referenced Robert John Stalter's file. Nevertheless, the booking officer did not retrieve or request the file because he was not aware of any policy requiring him to do so. The jail did, however, have a policy and procedure manual that required booking officers to obtain an extensive list of information from the individual being admitted to jail in order to make "a positive identification."[2] Stalter's Clerk's Papers (SCP) at 114.
Two days after being booked into the jail, Stalter was brought before the Pierce County Superior Court for his arraignment. At that time, Robert John Stalter's probation officer informed the court that the wrong man was in custody. Kevin Stalter was then released from jail.
Kevin Stalter thereafter brought suit against Pierce County and others in Pierce County Superior Court for, inter alia, false imprisonment and negligence. Pierce County then moved for a summary judgment dismissing Stalter's complaint. The trial court granted the county's motion, reasoning that the jail had no duty to investigate Kevin Stalter's claim of misidentification because any such duty resided with the arresting officer. After Kevin Stalter's motion for reconsideration was denied, he appealed to Division Two of the Court of Appeals.

Brooks v. Pierce County
On October 9, 1998, David W. Brooks, Jr. was stopped for a traffic violation by a Fife police officer. When the officer was informed by a dispatcher that there was a North Carolina warrant for the arrest of a David W. Brooks, Jr., he placed Brooks under arrest. The officer was advised that the North Carolina warrant described an individual remarkably similar in appearance to the person before him in terms of name, race, and date of birth. Despite Brooks's assertion that he had never been to North Carolina, the officer was not deterred from arresting him. At the Pierce County Jail, Brooks was booked notwithstanding his claims of misidentification.
Brooks appeared in Pierce County Superior Court on October 12, 1998. He did not, however, inform the court at that time that there had been a misidentification. Apparently, he had advised his appointed counsel prior to the hearing that he was not the individual named in the warrant, but the attorney failed to call this to the attention of the court, and Brooks was not provided with an opportunity to speak directly to the court. The trial court set an extradition hearing for November 12, 1998, and ordered Brooks held without bail until that date.
Although Pierce County received a facsimile copy of the warrant on the same day that Brooks was arrested, Pierce County contacted the North Carolina authorities on October 14, 1998, to request another copy of the warrant and a photograph and fingerprints of the person named in the warrant. Pierce County received a copy of the fingerprints on November 3, 1998. A technician, who reviewed the fingerprints that same day, concluded that they were not Brooks's fingerprints. Brooks was then released from custody.
After his release, Brooks filed a complaint against Pierce County in Pierce County Superior Court alleging false imprisonment, negligence, and a violation of 42 U.S.C. § 1983. Subsequently, Pierce County moved for summary judgment. In response, Brooks proffered the same sections of the jail's policy and procedure manual as had Stalter. Brooks also offered the deposition testimony of a county official who indicated that there is no policy or procedure to govern a situation where there is a question as to a person's identity. Another county official stated *1162 in a deposition that if a detainee's fingerprints do not match a file in their database, then no other action is taken to identify the detainee.[3]
The trial court granted Pierce County's motion, concluding that there was no evidence of a constitutional violation, and that any possible liability for the county ended when Brooks was brought before a judge because he was thereafter held pursuant to a court order. Brooks appealed that decision to Division Two of the Court of Appeals, which later consolidated his case and Stalter's case.

At the Court of Appeals
The Court of Appeals reversed the orders granting summary judgment to Pierce County on Stalter's and Brooks's negligence and false imprisonment claims. Stalter v. State, 113 Wash.App. 1, 4, 51 P.3d 837 (2002). It did, however, affirm the dismissal of Brooks's 42 U.S.C. § 1983 claim. Fundamental to its decision was its reasoning "that once jail management is on notice that it may be holding a detainee under authority of a warrant erroneously, it has a duty, at a minimum, to investigate further." Id. at 13, 51 P.3d 837. Pierce County petitioned this court for review of the Court of Appeals' decision to reverse the judgments of the trial courts. Brooks, in turn, petitioned for review of the Court of Appeals' decision to affirm the trial courts dismissal of his § 1983 claim. We granted both petitions. Stalter v. State, 149 Wash.2d 1016, 72 P.3d 763 (2003).

II.
Summary judgment is proper if "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." CR 56(c). Viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, the moving party has the burden of showing there is no genuine dispute as to any material fact. Berger v. Sonneland, 144 Wash.2d 91, 102-03, 26 P.3d 257 (2001). "Appellate review of summary judgment is de novo...." Michak v. Transnation Title Ins. Co., 148 Wash.2d 788, 794, 64 P.3d 22 (2003).
Pierce County contends that the Court of Appeals erred in reversing the dismissal of both plaintiffs' negligence and false imprisonment claims, asserting that imposing a duty on jailers to investigate particularly persistent claims of misidentification would place an unreasonable burden on jail management. Stalter and Brooks contend that it is only reasonable to require jail officials to know who it is that they are detaining, and that imposition of such a duty would not be burdensome, particularly considering that the written policies of the Pierce County Jail require "a positive identification" of an individual during booking. SCP at 114.
"The elements of negligence are duty, breach, causation, and injury." Keller v. City of Spokane, 146 Wash.2d 237, 242, 44 P.3d 845 (2002). It is well established that a jail is liable for false imprisonment if it holds an individual for an unreasonable time after it is under a duty to release the individual. Tufte v. City of Tacoma, 71 Wash.2d 866, 872, 431 P.2d 183 (1967). Therefore, Stalter's and Brooks's claims of negligence and false imprisonment each turn on the existence of a duty on the part of the county. "[W]hether a particular class of defendants owes a duty to a particular class of plaintiffs is a question of law and depends on mixed considerations of `logic, common sense, justice, policy, and precedent.'" Keates v. City of Vancouver, 73 Wash.App. 257, 265, 869 P.2d 88 (quoting Hartley v. State, 103 Wash.2d 768, 779, 698 P.2d 77 (1985)), review denied, 124 Wash.2d 1026, 883 P.2d 327 (1994).
Stalter and Brooks each point to the written policies and procedures of the Pierce County Jail as support for their contention that the county's jailers were under a duty to positively identify them as the persons named in the warrants upon which their arrests were made. Pierce County responds that these policies only serve to identify the person while in custody so as not to confuse the arrestee with others in the jail *1163 population. The Court of Appeals agreed with the county on this issue, concluding that Stalter and Brooks failed to show "that the County's manual requires booking officers to verify the detainee's identity." Stalter, 113 Wash.App. at 12, 51 P.3d 837.
In our view, the jail's policies are ambiguous in that they do not clearly require booking officers to make a determination of every detainee's actual identity. Ambiguity exists when language is subject to more than one reasonable interpretation. Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995). The county explains that requiring "a positive identification" only obligates the jail personnel to differentiate between detainees so that one detainee is not confused with another. The county's explanation is as reasonable as the contention of Stalter and Brooks that these policies require the jail to ascertain every inmate's true identity. Furthermore, Stalter and Brooks fail to explain how an ambiguous policy is sufficient to create a legal duty. These policies are, therefore, insufficient to support a duty on jail personnel to establish every detainee's true identity.
Stalter and Brooks argue, additionally, that case law supports the imposition of a duty on the jail to investigate the identity of detainees. Under Washington case law, jailers have a duty to take steps to release a detainee once they know or should know that confinement of the detainee is unwarranted. Tufte, 71 Wash.2d at 870, 431 P.2d 183. In Tufte, the facts were that the plaintiff, Paul Tufte, was arrested because Tacoma police officers believed he was driving while intoxicated. The record showed, however, that Tufte was a diabetic and that he was carrying a diabetic identification card, sugar lumps, and a bottle of saccharine tablets when he was booked into jail. During the time Tufte was confined, his wife and physician called the Tacoma Police Department to inform it that Tufte was a diabetic who was missing and probably suffering from insulin shock. These calls did not gain Tufte's release. Approximately 12 hours after his arrest, Tufte regained consciousness and managed to bail himself out of jail. Tufte then brought suit for damages against the City of Tacoma for false imprisonment and wrongful arrest, and ultimately obtained a judgment.
On appeal to this court, we held that "[i]ntentionally to hold another [person] in confinement for being drunk when one knows or should know that he is not drunk, is to confine him unjustifiably." Tufte, 71 Wash.2d at 870, 431 P.2d 183. We determined that even though the initial arrest of Tufte was justified, once jail personnel knew or should have known that he was not drunk, based on information provided to them, they were "under a duty to release [Tufte] from confinement." Id. at 872, 431 P.2d 183.
In resolving the case before us, we must delicately balance the need for effective law enforcement against the obvious societal interest in avoiding the incarceration of persons who should not be incarcerated. Although Tufte was not a misidentification case, it does provide guidance concerning the duties that jailers owe to persons being detained pursuant to an arrest warrant.
The Court of Appeals correctly summarized the holding in Tufte as prohibiting jail authorities from ignoring evidence which establishes that continued confinement of an individual is unjustified. Stalter, 113 Wash. App. at 13, 51 P.3d 837. The Court of Appeals went beyond Tufte, however, to impose an affirmative duty on jails to investigate whenever jail personnel are put on notice that they may be holding a person under a warrant erroneously. In our view, the imposition of such an affirmative obligation is not warranted, and we, therefore, decline to put our imprimatur on the duty imposed by the Court of Appeals. Rather, we affirm the essential holding of Tufte to the extent that jail personnel have the duty to take steps to promptly release a detainee once they know or should know, based on information presented to them, that there is no justification for holding the individual.
Applying that duty to the present case, we are satisfied that Stalter presented sufficient evidence to create a question of material fact as to whether this duty was breached by Pierce County. Along with his adamant protests of misidentification, Stalter's physical characteristics varied significantly from *1164 the characteristics of the individual described in the warrant. As noted above, Stalter's name, weight, height, eye color, and birth date differed from that of the individual described in the warrant. Although these discrepancies were brought to the attention of the jail personnel, they took no steps toward releasing Stalter. In our view, these facts are sufficient to present a jury question as to whether the jail knew or should have known that it was detaining an individual who was the same individual named in the arrest warrant.
The Brooks facts do not, however, justify a trial. Significantly, Brooks matched the description in the warrant completely. In light of that, his protests of misidentification were not sufficient to establish that the jailers knew or should have known that there was a misidentification. Because Brooks failed to provide the jail personnel with sufficient evidence of a misidentification and Stalter was released immediately after his first court appearance, we believe it is unnecessary to discuss the effect a court hearing might have on a jails liability for erroneously holding an individual.

III.
Brooks contends that the Court of Appeals erred in affirming the dismissal of his § 1983 claim. He asserts that his right to due process was violated by his prolonged detention without any investigation into his identity. Pierce County responds that there is no constitutional duty to investigate during a brief confinement. The Court of Appeals agreed with the county, holding that Brooks failed to establish a constitutional violation. It, therefore, dismissed his § 1983 claim.
Federal law provides that
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
42 U.S.C. § 1983. "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right `secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (quoting 42 U.S.C. § 1983). If the answer to this inquiry is no, then there is "no claim cognizable under § 1983." Id. at 146-47, 99 S.Ct. 2689.
In Baker, the United States Supreme Court held that there was no constitutional violation when the plaintiff was validly arrested pursuant to a warrant, jailed amidst continuing protests that there was a misidentification, and finally released after a three day holiday weekend when the authorities realized that he was not the individual named in the warrant. Indeed, even "an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to [a] facially-valid warrant for a few days does not amount to a constitutional violation." Kennell v. Gates, 215 F.3d 825, 828 (8th Cir.2000).
Prior to his arraignment, Brooks had been confined for three days over a weekend. This is equivalent to the time the detainee was held in Baker in which the court found no constitutional violation. Brooks argues that this court should consider his entire 26-day confinement because the judge failed to address and resolve the issue of misidentification at his arraignment. In support of this argument, Brooks cites Hernandez v. City of Chicago, 2001 WL 128246 (N.D.Ill. Feb.9, 2001) for the proposition that a court appearance will not necessarily terminate a jail's liability for a prolonged incarceration due to a misidentification. The hearing in Hernandez was at traffic court, and there is no indication that the plaintiff was provided an attorney for the appearance. In contrast, Brooks was represented at his hearing at the superior court, a court of general jurisdiction. We conclude, therefore, that Brooks failed to establish a violation of the United States Constitution because he was only held three days before he was provided with a hearing at which his attorney had the opportunity to argue the issue of misidentification to the judge.

IV.
In conclusion, we hold that jail personnel have a duty to take steps to promptly release *1165 a detainee once they know or should know, based on information that is actually presented to them, that they are holding the wrong person. We reject the argument that jailers have a duty to investigate claims of misidentification. Therefore, we conclude that Brooks's claims of negligence and false imprisonment were properly dismissed by the trial court, and the Court of Appeals erred in determining otherwise. We, however, affirm the Court of Appeals' affirmance of the dismissal of Brooks's § 1983 claim, and its decision to remand in Stalter v. State for trial on Stalter's claims of negligence and false imprisonment.
JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur.
CHAMBERS, J. (concurring in part and dissenting in part).
The people of this State are entitled to the exercise of ordinary care by their public servants to ensure those lawfully incarcerated are not inadvertently released. The people of this State are entitled to the exercise of due care in the supervision of those who have been released. See Taggart v. State, 118 Wash.2d 195, 218, 822 P.2d 243 (1992). The people of this State are also entitled to the exercise of ordinary care to ensure that those who should not be incarcerated are not incarcerated. To the extent that the majority recognizes that principle, I concur. However, to the extent that the majority finds no duty to take reasonable steps to investigate claims of misidentification, I dissent. I would affirm the Court of Appeals in its entirety.

STATE LAW CLAIMS
When Washington repealed sovereign immunity in 1961, it was because our legislature concluded that public servants should be accountable and responsible for their conduct. No higher standard is required of governmental entities than is required of ordinary folks. The standard of ordinary care does not guarantee that a mistake will not be made. However, accountability to the standard of ordinary care does guarantee that governments may not act wrongly with impunity.
As the majority properly recognizes, jailers have a duty to take steps to release a detainee once they know or should know that the detention is unwarranted. Tufte v. City of Tacoma, 71 Wash.2d 866, 870, 431 P.2d 183 (1967). The same standard should apply here. Accordingly, jailers have a duty to take steps to release a detainee once they know or should know in the exercise of ordinary care that the confinement of the detainee is improper.
The majority discusses the duty of the detainee to put the jail on notice that a mistake has been made. We should not confuse the duty of the detainee to exercise ordinary care to inform the authorities of a mistaken identity with the duty of the government to exercise care in performing its duties.
Albeit in the context of the 42 U.S.C. § 1983 claim, the majority rejects David Brooks' argument that the court should consider his entire 26 days of confinement, including 23 days of confinement after his court appearance. The majority could be read as suggesting that the appearance of Brooks before a judge should cutoff any consideration of the remaining 23 days of being wrongfully confined. I caution that the majority should not be read to imply that, as a matter of law, Brooks' court appearance ends any potential liability. The majority of this court chose not to reach that issue. Majority at 1163-1164. The majority correctly states, "[t]he elements of negligence are duty, breach, causation, and injury." Majority at 1162 (quoting Keller v. City of Spokane, 146 Wash.2d 237, 242, 44 P.3d 845 (2002)). As we have long recognized there may, of course, be more than one proximate cause of an injury. Hellan v. Supply Laundry Co., 94 Wash. 683, 689, 163 P. 9 (1917). Unless the court's action amounts to a superseding intervening cause, the jail is not relieved of its duty.

FEDERAL LAW CLAIMS
I concur with the majority and the Court of Appeals that Brooks' 42 U.S.C. § 1983 due process claim was properly dismissed.

*1166 CONCLUSION
Sadly, the majority has rejected "the argument that jailers have a duty to investigate claims of misidentification." Majority at 1164-1165. Under Washington law, jailers should have a duty not to detain a person that they know, or should know in the exercise of ordinary care, should not be detained. I join the majority in remanding Kevin Stalter's claims to trial and in dismissing Brooks' § 1983 action, though for different reasons. However, since I would remand Brooks' common law claims to trial, I dissent in part.
SANDERS, J., concurs.
NOTES
[1] The record contains: (1) Clerk's Papers for Stalter (SCP), (2) Clerk's Papers for Brooks (BCP), (3) Verbatim Report of Proceedings for Stalter (SRP), and (4) Verbatim Report of Proceedings for Brooks (BRP).
[2] The manual provides that "[i]n order to provide for a positive identification of the person being admitted, the following information will be obtained at intake/booking:" (1) name and aliases; (2) current address; (3) date, duration of confinement, and a copy of the court order or other legal basis for commitment; (4) name, title and signature of delivering officer; (5) charges; (6) court order or remand order number for juveniles; (7) sex; (8) age; (9) birth date; (10) place of birth; (11) race; (12) employment; (13) health status; (14) emergency contact; (15) telephone calls made by arrestee at time of admission; (16) social security number; (17) notation of all cash and other property; (18) other information concerning special custody requirements, service needs, or other identifying information such as a birthmark or tattoo. SCP at 114.
[3] The Pierce County database only includes fingerprints obtained from individuals who have been fingerprinted by the Tacoma Police Department or the Pierce County Sheriff's Department.