[No. 35313-0-II.   Division Two.   July 1, 2008.]

MAGDALINA QUITORIO VERGESON, *Appellant*, v. KITSAP COUNTY
ET AL., *Respondents*.

528

*Anthony C. Otto*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Neil R. Wachter, Deputy*; and *Roger A. Lubovich, City Attorney*, and *Mark E. Koontz, Assistant*, for respondents.

¶1 HUNT, J. — Magdalina Vergeson appeals the trial court's summary judgment dismissal of her negligence claim against Kitsap County (County) and the city of Bremerton (City). She argues that (1) the County and the City owed her a duty to exercise ordinary care in removing court-quashed warrants from computerized information systems; (2) the public duty doctrine does not apply; (3) even if the public duty doctrine applies, her claim falls within the doctrine's exceptions, thereby allowing her action to proceed; and (4) the facts establish a breach of duty, including a per se breach of duty under the res ipsa loquitur doctrine.

¶2 We hold that (1) the public duty doctrine applies and Vergeson failed to establish an exception and (2) in the alternative, even if the County and City owed an individualized duty to Vergeson, she fails to show that the County and the City did not exercise ordinary care. We affirm.

## FACTS[1]

### I. BACKGROUND

## A. Two Arrest Warrants Issued

### 1. First warrant, Kitsap County cause no. 85-1-00325-8

¶3 On May 24, 1985, the County charged Magdalina Vergeson with forgery and unlawful issuance of a bank check in Kitsap County cause no. 85-1-00325-8 under the name "LINA Q. VERGESON a/k/a MAGDALINA QUITARIO CUDDIE." Clerk's Papers (CP) at 104. The County used this same name and alias when it issued a warrant for Vergeson's arrest in this cause number.

¶4 On June 6, the City entered this Kitsap County cause no. 85-1-00325-8 warrant in the State of Washington database, WASIC,[2] using only the name "Lina Q. Vergeson" and the City's police department case number.[3] The City did not also enter Vergeson's "Magdalina Quitario Cuddie" alias. Nor did the City enter this county warrant into the national database (NCIC).

### 2. Second warrant, Kitsap County cause no. 85-1-00610-9

¶5 Sometime later in 1985, the County charged Vergeson with another separate crime, for which it issued an arrest

---

[1] There are no factual disputes underlying this appeal.

[2] WASIC stands for Washington State Crime Information Center.

[3] At the time the County issued Vergeson's arrest warrant, the City maintained its own records for arrest warrants, using a different case-numbering system. According to County Support Service Specialist Pamela Morris's uncontradicted affidavit:

> [b]ecause this warrant was issued before 1992 and was based on a non-KCSO [Kitsap County Sheriff's Office] investigation, the BPD [Bremerton Police Department] maintained the records for this warrant. Per WASIC and NCIC [National Criminal Information Center] policy, it is each entering agency's responsibility to verify all warrant information on a yearly basis and to check with Superior Court to verify each warrant is still valid.

CP at 53.

warrant under Kitsap County cause no. 85-1-00610-9. The record on appeal does not contain the original charging information or warrant for this second charge and cause number. Vergeson does not challenge the validity of either arrest warrant.

## B. Arrest on Second Warrant and Removal from Databases

¶6 Some 18 years later, on August 16, 2003, United States Customs arrested Vergeson on the second county warrant, Kitsap County cause no. 85-1-00610-9.

¶7 On August 18, Pamela Morris, an experienced support services specialist for the county sheriff's office, received notice that the United States Customs had served this warrant on Vergeson. Morris searched the Washington and national warrant databases using the 85-1-00610-9 county warrant cause number and the names "Magdalina Quitario Cuddie, Magdalina Vergeson, and Magdalina Vargson," the "only names for [Vergeson] known at that time."[4] CP at 54. Following accepted standard procedures,[5] Morris located and removed the 85-1-00610-9 county warrant from both the national and state databases.

¶8 Morris found no other warrants under these three names listed for Vergeson; therefore, she removed no other Vergeson arrest warrants.[6] Nor did Morris have additional

---

[4] According to Morris's affidavit, Washington's warrant database can be searched only by names and by the originating police agency's case numbers.

[5] Morris stated in her affidavit in support of the County's motion for summary judgment, "Our division follows all WASIC/NCIC policies for the entry, removal, and modification of all warrants." CP at 53.

[6] In her later affidavit in support of the County's motion for summary judgment, Morris explained why she believed the warrant did not appear: At the time of Vergeson's 2004 arrest on the warrant issued in Kitsap County cause no. 85-1-00325-8,

this warrant was still maintained by the BPD and was still recorded under the single name "Lina Q. Vergeson" in the WASIC database, but not in the combined WASIC/NCIC database. The WASIC database can only be searched under fields containing subject names and originating police agency case numbers. Therefore, I believe that I did not locate the warrant from cause

information suggesting that a further search might be needed.

## C. First Warrant Quashed But Not Removed from Databases

¶9 In September 2003, the Kitsap County Superior Court quashed Vergeson's first warrant, which had been issued in 1985 in Kitsap County cause no. 85-1-00325-8. The order quashing the warrant contained this county cause number and the names "Lisa Vergeson" and "Magdalina Q[.] Cuddie."[7] A Kitsap County Superior Court clerk called Morris and told her the court had quashed a warrant for a "Magdalina Cuddie" under cause no. 85-1-00325-8.

¶10 Morris checked the national and Washington State databases, but found no warrants under the name "Magdalina Cuddie" or "other names [they] possessed for Ms. Vergeson" or under cause no. 85-1-00325-8. CP at 54. Morris "concluded that this cause number [85-1-00325-8] must have been attached to the warrant cause number 85-1-00610-9, which [Morris] had removed from the databases back on August 18, 2003." CP at 54. Thus, Morris did not find and remove the warrant in cause no. 85-1-00325-8 from the database.

¶11 When Morris later found out that cause no. 85-1-00325-8 had not been removed from the databases, she

believe[d] that [she] did not locate the warrant from cause number 85-1-00325-8 on September 10, 2003 or on any other date prior to February, 14, 2004, because the searchable fields in the WASIC database contained neither the cause number

number 85-1-00325-8 on September 10, 2003 or on any other date prior to February 14, 2004, because the searchable fields in the WASIC database contained neither the cause number "85-1-00325-8" nor the names KCSO possessed for Ms. Vergeson, including "Magdalina Cuddie."

CP at 54-55.

[7] The court order quashing the warrant read: "State of Washington vs. Lisa Vergeson AKA Magdalina Q Cuddie," with Vergeson's names handwritten on the order. CP at 75.

"85-1-00325-8" nor the names [the Kitsap County Sheriff's Office] possessed for Ms. Vergeson, including "Magdalina Cuddie."

CP at 54-55.

## D. Second Arrest on First Warrant

¶12 On February 14, 2004, about six months after Morris was unable to locate Vergeson's arrest warrant on cause no. 85-1-00325-8 in the databases, the Washington State Patrol arrested Vergeson on this warrant. On February 17, the Kitsap County Superior Court entered another order quashing this warrant; the order included both Kitsap County cause nos. 85-1-00325-8 and 85-1-00610-9 and the name "Magdalina Q. Cuddie."

¶13 The City removed Vergeson's arrest warrant from the Washington database that same day.

## II. PROCEDURAL HISTORY

¶14 On February 13, 2006, Vergeson sued the City and the County. She alleged that they had been negligent and had violated her civil rights by failing to remove all records of her court-quashed warrants from the Washington and national databases.

¶15 The City and the County moved for summary judgment. The trial court granted them summary judgment and dismissed Vergeson's claims.

¶16 Vergeson appeals the trial court's dismissal of her negligence claim only.[8]

## ANALYSIS

¶17 Vergeson argues that the trial court erred in dismissing her negligence claims on summary judgment because the County and the City owed her an actionable duty

---

[8] Vergeson does not appeal the trial court's dismissal of her civil rights claim.

to exercise ordinary care in removing her court-quashed warrant from the databases. We disagree.

## I. Negligence Claim against the City

¶18 At oral argument, Vergeson conceded that she does not have a negligence claim against the City. She explained that she had included the City in her complaint to avoid having the County blame the City for the alleged negligence. Accepting this concession, we affirm the trial court's summary judgment dismissal of Vergeson's negligence claim against the City.

¶19 Thus, our analysis focuses on Vergeson's negligence claim against the County.

## II. Negligence Claim against the County

### A. Standard of Review

¶20 When reviewing a grant of summary judgment, we engage in the same inquiry as the trial court, considering all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party, here, Vergeson. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We uphold summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tunstall v. Bergeson*, 141 Wn.2d 201, 209, 5 P.3d 691 (2000), *cert. denied*, 532 U.S. 920 (2001). We review all questions of law de novo, including whether a defendant in a civil suit owed a duty to a plaintiff. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001).

### B. Negligence Elements

¶21 To sustain her negligence action, Vergeson must be able to plead and to prove that the County (1) owed a duty to her; (2) breached that duty; and (3) caused her damages, both legally and proximately. *Hartley v. State*,

103 Wn.2d 768, 777, 698 P.2d 77 (1985). Because Vergeson fails to support the first element, we need not address the other two.

## 1. Duty—public duty doctrine

■ ■ ¶22 In determining whether the County owed Vergeson a duty, we look to the public duty doctrine.[9] The public duty doctrine and its exceptions "remind[ ] us that a public entity—like any other defendant—is liable for negligence only if it has a statutory or common law duty of care." *Osborn v. Mason County*, 157 Wn.2d 18, 27-28, 134 P.3d 197 (2006).

> "[Our] threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general."

*Babcock*, 144 Wn.2d at 784-85 (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1998)). Thus, under the public duty doctrine, a government entity is not liable for a public official's negligence unless the plaintiff shows that the government breached a duty owed to her individually rather than to the public in general. *Babcock*, 144 Wn.2d at 785. Regardless of the court order quashing one of her arrest warrants, Vergeson fails to show under any sustainable theory that the County owed, let alone breached, a duty to her individually.

### a. Vicarious liability

¶23 Without citation to authority, Vergeson asserts that the public duty doctrine applies only to vicarious liability

---

[9] Historically, the doctrine of sovereign immunity shielded local Washington governments from liability for damages. The legislature, however, abolished the doctrine of sovereign immunity in Washington. *Chambers-Castanes v. King County*, 100 Wn.2d 275, 281, 669 P.2d 451 (1983). Nevertheless, the legislature's abolition of sovereign immunity did not affect the public duty doctrine. *See Chambers-Castanes*, 100 Wn.2d at 288 (abrogation of sovereign immunity merely allows suits against governmental entities; *it does not create a duty where none existed before*).

negligence claims. She then argues that her negligence claim is directly against the County, not based on vicarious liability. Vergeson's argument fails for two reasons: (1) contrary to her assertion, she bases her claim on vicarious liability and (2) the public duty doctrine is not limited to vicarious liability claims.

¶24 First, Vergeson attempts to hold a governmental entity, the County, vicariously liable for its employee's action or, more accurately here, alleged failure to act.[10] As we held and our Supreme Court affirmed in *Babcock*, 144 Wn.2d at 784-88, the public duty doctrine applies to a plaintiff's attempt to hold a governmental entity liable for damages in negligence based on a county employee's alleged statements and inactions on which the plaintiff allegedly relied to his or her claimed detriment. *Babcock v. Mason County Fire Dist. No. 6*, 101 Wn. App. 677, 684, 5 P.3d 750 (2000) (public duty doctrine applied: no individual duty owed by county fire department to Babcock and no county vicarious liability for fire fighters' statements restraining Babcock from attempting to extinguish the fire that destroyed his home and garage). As in *Babcock*, the public duty doctrine applies to Vergeson's attempt to hold the County vicariously liable for its employee's alleged failure to act.

¶25 Second, Vergeson cites no authority for her assertion that the public duty doctrine applies only to vicarious liability negligence claims. On the contrary, established precedent holds that the public duty doctrine is a "focusing tool" that courts use to determine whether a public entity owes a duty to a "nebulous public" or to a particular individual. *Taylor*, 111 Wn.2d at 166. Accordingly, the public duty doctrine applies to Vergeson's negligence claim and we proceed with our analysis.

---

[10] "Vicarious liability" is a common law rule that makes an employer liable for an employee's actions under certain circumstances. *See* 8 WILLIAM HOLDSWORTH, A HISTORY OF ENGLISH LAW 472-82 (2d ed. 1937) (a general history on the development of the vicarious liability rules).

## b. Public duty doctrine exceptions

¶26 We next address whether, as Vergeson further asserts, any exceptions to the public duty doctrine apply to her claim. "There are four exceptions to the public duty doctrine in which the governmental agency acquires a special duty of care owed to a particular plaintiff or a limited class of potential plaintiffs." *Babcock*, 144 Wn.2d at 785-86. These exceptions are (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. *Babcock*, 144 Wn.2d at 785-86. Vergeson argues that her claim fits within all four of these exceptions. We disagree.

### i. Legislative intent

¶27 The legislative intent exception to the public duty doctrine applies when the statute or regulation that establishes a governmental duty expressly identifies and protects a particular and defined class of persons. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 930, 969 P.2d 75 (1998). Absent such express identification, we will not imply such legislative intent. *Ravenscroft*, 136 Wn.2d at 930.

¶28 Vergeson concedes that no statutes or regulations identify or protect a particular defined class of persons from arrests based on quashed warrants. Nor does she cite any authority to support her argument that a "legislative intent" exception to the public duty doctrine arises from the Washington and United States Constitutions' "intent" to protect plaintiffs from "unauthorized warrantless arrests." Br. of Appellant at 32. Although Vergeson is correct that our state and federal constitutions protect individuals from "unauthorized warrantless arrests," she does not establish that these constitutional provisions evince legislative intent that a government entity owes a specific duty to a particular defined class of persons, such as

Vergeson, to excise lawfully issued but later quashed warrants from government databases.

¶29 For example, the Fourth Amendment to the United States Constitution protects the general public from unreasonable searches and seizures, but it does not protect only a particular and defined class of persons. Similarly, article I, section 7 of the Washington Constitution protects *all people* in Washington from unreasonable government searches and seizures, not just a particular and defined class of persons. As our Supreme Court has succinctly explained, " 'a duty to all is a duty to no one.' " *State v. Taggart*, 118 Wn.2d 195, 217, 822 P.2d 243 (1992) (internal quotation marks omitted) (quoting *Taylor*, 111 Wn.2d at 163).

¶30 Additionally, the legislative intent exception applies only to statutes and regulations. *See Ravenscroft*, 136 Wn.2d at 930. Accordingly, we hold that the legislative intent exception to the public duty doctrine does not apply to Vergeson's negligence claims against the County.

### ii. Failure to enforce

¶31 The failure-to-enforce exception to the public duty doctrine applies where (1) governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, (2) these agents fail to take corrective action despite a statutory duty to do so, and (3) the plaintiff is within the class of persons the statute intended to protect. *Honcoop v. State*, 111 Wn.2d 182, 190, 759 P.2d 1188 (1988) (citing *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)). Vergeson meets none of these failure-to-enforce exception requirements: She fails to identify (1) any statute that was intended to protect her, (2) any statute that was violated, (3) a government agent that had knowledge of a statutory violation, or (4) a government agent failing to take corrective action required by a statute.

¶32 We hold, therefore, that Vergeson's claim does not fall within the failure-to-enforce exception to the public duty doctrine.

### iii. Rescue doctrine

¶33 The rescue exception to the public duty doctrine applies where a governmental entity or its agent (1) undertakes a duty to aid or warn a person in danger; (2) fails to exercise reasonable care; and (3) offers to render aid and, as a result of the offer of aid, either the person to whom the aid is to be rendered or another acting on that person's behalf relies on this governmental offer and consequently refrains from acting on the victim's behalf. *Chambers-Castanes v. King County*, 100 Wn.2d 275, 285 n.3, 669 P.2d 451 (1983). Vergeson's claim does not fit within the rescue doctrine because she fails to identify a governmental entity, or its agent, that undertook a duty to warn or to aid her while she was in danger.[11]

¶34 We hold, therefore, that the rescue exception to the public duty doctrine does not apply to Vergeson's negligence claims against the County.

### iv. Special relationship

¶35 Under the special relationship exception, a governmental entity is liable for negligence where there is (1) direct contact between the public official and injured plaintiff, (2) express assurance given by the public official to the injured plaintiff, and (3) justifiable reliance by the plaintiff on such express governmental assurance. *Babcock*, 144 Wn.2d at 786. Thus, to establish a special relationship exception, Vergeson must have sought an express assurance and the County must have unequivocally given assurances. *Babcock*, 144 Wn.2d at 789. This she has also failed to do.

---

[11] Although Vergeson asserts that the County "undertook to act to alleviate her peril of subsequent arrest," she does not cite any authority that subsequent arrest on a validly issued warrant is a danger requiring rescue. Br. of Appellant at 35.

540

¶36 Our Supreme Court has consistently held:

A government duty cannot arise from implied assurances. *It is only where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government*, the government intends that it be relied upon and it is relied upon by the individual to his detriment, that the government may be bound."

*Babcock*, 144 Wn.2d at 789 (emphasis added) (footnote omitted) (quoting *Meaney v. Dodd*, 111 Wn.2d 174, 180, 759 P.2d 455 (1988)); *see also Honcoop*, 111 Wn.2d at 192-93; *Taylor*, 111 Wn.2d at 167. The record here does not show that Vergeson made a direct inquiry to the trial court or to any other branch of the county government seeking express assurance that the County would remove her quashed warrant from the databases. Nor has she shown that the County set forth any incorrect information in this regard. Moreover, it appears from Morris's unrebutted affidavit that Vergeson's multiple aliases directly contributed to the County's inability to locate her warrant in the databases so it could be removed.

¶37 In contrast to the *Chambers-Castanes*[12] plaintiffs, our Supreme Court concluded that the *Babcock* plaintiffs neither sought express assurances from the fire fighter nor claimed that they specifically received such assurances when the fire fighter ordered them not to remove any of their property from their burning home and not to move a truck that was near their home. *Babcock*, 144 Wn.2d at 781, 791. The fire fighter also told the plaintiffs that the fire fighters would " 'take care of protecting [the Babcocks'] property.' " *Babcock*, 144 Wn.2d at 781. Our Supreme Court held that the Babcocks did not specifically seek assurance from the fire fighter nor were the fire fighter's statements an express assurance because "the fire fighter in this case

[12] In *Chambers-Castanes*, our Supreme Court found that the plaintiff both sought and received express assurances when the plaintiff repeatedly called the 911 operator requesting assistance and asking if someone would be coming to help, and the 911 operator assured the plaintiff that help was on the way. 100 Wn.2d at 279-87.

did not indicate she or the other fire fighters would act in a specific manner." *Babcock*, 144 Wn.2d at 791.

¶38 Here, as in *Babcock*, Vergeson fails to identify any express assurances that she sought from or was given by the County that it would remove her quashed warrant from the databases. Nor does Vergeson identify any express assurances that she sought from or was given by the County that she would not be subsequently arrested. No matter how reasonable, Vergeson's unspoken expectation that her quashed warrant would be removed from the databases does not qualify as an express assurance for purposes of establishing this special relationship exception to the public duty doctrine.

### c. Court order quashing warrant not an "express assurance"

¶39 Without directly asserting that she sought and received "express" assurances from the County, Vergeson further argues that the court order quashing her warrant created a duty for the County to secure her "future liberty." She contends that the 2003 court order was an "assurance" by the County simply because the county prosecutor was present at the warrant hearing.[13] Vergeson's argument fails to distinguish between a court order and an actionable negligence duty.

¶40 A "court order" is "[a] written direction or command delivered by a court or judge." BLACK'S LAW DICTIONARY 1129 (8th ed. 2004). Although a court order *may* create a legal obligation with its own legal consequences to the person to whom the order is addressed,[14] a court order does not automatically create a duty on the part of an unnamed person, such as county employee Morris, giving rise to a civil negligence claim against that unnamed

---

[13] Although Vergeson does not argue that she established privity with the County through the judge issuing the warrant-quashing order, we note that a judge's acts, performed within his or her employment capacity, are immune from tort liability. *See Bishop v. Miche*, 137 Wn.2d 518, 532, 973 P.2d 465 (1999).

[14] For example, failure to follow a court order may result in a court holding a person in contempt of court or imposing a sanction or a fine. *See In re Dependency of A.K.*, 162 Wn.2d 632, 174 P.3d 11 (2007).

person's employer based on an alleged breach of duty. Thus, we hold that the mere existence of a court order, without express assurances by the County to a potential plaintiff such as Vergeson, does not create an actionable civil negligence duty either on its own or as a special relationship exception to the public duty doctrine.

## 2. No duty to investigate further

¶41 Vergeson candidly acknowledges that County employee Morris attempted to remove the warrant from the databases. Thus, even assuming, though having already decided to the contrary, that Morris had an actionable duty to attempt to remove Vergeson's warrant from the Washington database, she fulfilled that duty by following accepted, standard procedures for searching the databases[15] under the names she had for Vergeson. She had no additional duty to investigate further the warrant's apparent absence from the database after she searched and did not find it, especially in light of Vergeson's multiple names and aliases, as well as the formerly used system of city case numbers, which apparently prevented discovery of the warrant during Morris's initial standard-procedure search.[16]

¶42 Nonetheless, Vergeson rests her negligence claim on her assertion that Morris was required to investigate further to determine why she could not find Vergeson's warrant in the Washington database.[17] Again, the law neither requires such an extraordinary search nor supports this type of extended duty. Our Supreme Court recently reversed our recognition of an analogous alleged "duty to

---

[15] *See supra* note 5.

[16] *See supra* note 6.

[17] Vergeson argues that after failing to find the warrant in the Washington database, Morris should have "inquire[d] further, either from the clerk, from the prosecutor, or from other municipal agencies she knew carried warrants of this vintage." Br. of Appellant at 21.

further investigate"[18] in *Stalter v. State*, 151 Wn.2d 148, 86 P.3d 1159 (2004). One of the *Stalter* plaintiffs, David Brooks,[19] brought a negligence claim against Pierce County, alleging that the Pierce County jail had negligently held him for three days without investigating whether he was the individual named in the warrant on which he was arrested. 151 Wn.2d at 153-54. In rejecting Brooks' argument that Pierce County had a duty to investigate further, our Supreme Court held that although "jail personnel have a duty to take steps to promptly release a detainee once they know or should know, based on information that is actually presented to them, that they are holding the wrong person," they do *not* "have a duty to investigate claims of misidentification." *Stalter*, 151 Wn.2d at 160.

¶43 We apply *Stalter* to the analogous circumstances here. After "delicately balanc[ing] the need for effective law enforcement against the obvious societal interest in avoiding the incarceration of persons who should not be incarcerated," we find no support in the law for the existence of an actionable duty on the part of the County to investigate further after a county employee has tried but failed to locate a quashed warrant using accepted, routine procedures in an attempt to remove the warrant from Washington's database "based on information that [was] actually presented to [her]." *Stalter*, 151 Wn.2d at 157, 160.

## C. Distinction between Negligent and Intentional Tort Claims

¶44 We carefully distinguish our holding in this negligence-claim context from intentional tort claims, which are not before us. If Vergeson had alleged an inten-

---

[18] In *Stalter v. State*, 113 Wn. App. 1, 51 P.3d 837, *rev'd*, 151 Wn.2d 148, 86 P.3d 1159 (2004), we held that the County had a duty to confirm a plaintiff's identity after he claimed misidentification. Our Supreme Court reversed our holding, concluding instead that no such duty existed.

[19] The court consolidated David Brooks' claims with Kevin Stalter's claims. *Stalter*, 151 Wn.2d at 154.

tional tort, such as false arrest, false imprisonment, or intentional infliction of emotional distress, the public duty doctrine would not have applied.[20] *See Turngren v. King County*, 104 Wn.2d 293, 304-05, 705 P.2d 258 (1985). Thus, if the facts here established a more egregious, willful action or inaction, such as a County employee having *intentionally* failed to remove a quashed warrant or having *intentionally* entered false information into a database, an injured plaintiff would not need to prove a duty specific to her.

¶45 Accordingly, we hold that Vergeson has failed to show that the County owed her an actionable duty; therefore, there could be no breach and no consequential damages. We affirm the trial court's dismissal of her negligence action on summary judgment.

PENOYAR, A.C.J., and BRIDGEWATER, J., concur.

---

[20] And Vergeson would not have needed to prove that the County owed a duty to her as an individual, rather than to the public in general. *See Turngren v. King County*, 104 Wn.2d 293, 304-05, 705 P.2d 258 (1985).